## No. 4560.

### Succession of A. G. Payne.

Where the husband joins the wife in her petition, this is sufficient authorization to her to sue.

Where the motion was for a suspensive appeal, and the one granted was merely devolutive, if the appellant submits to this modification of his demand, the appellee, not being injured by it, can not complain.

Where the motion to appeal was made in the name of the husband and the wife, the authorization to appeal is sufficiently established, and the appeal bond can not be objected to, when made out in the name of the husband and the wife and is signed by both.

Where plaintiff was not an heir; Held—That she had no right to attack a will in so far as it related to the disposal made by the testator of his property, but that she might sue to annul it in so far as it interfered with her rights to have the tutorship of her grand children.

It is unnecessary to decide the question raised whether a testament is valid as a will by nuncupative public act, when it is good as a nuncupative will under private signature.

Where the objection to the validity of such a will was, that the person who wrote and read it was not designated there in as a witness, but as a notary;

Held—That there is no law which declares that a man, because he is a notary public, is not a good witness to a will; and there can be seen no reason why he should not be.

A will can be set aside only when the law itself pronounces it to be null on account of the want of compliance with those formalities which are declared to be sacramental.

Where A was appointed by will tutor to minors, and at the same time the testator declared that the care, management and raising of his children should be left in the hands of Miss B:

Held—That this was not appointing her tutrix; that this was merely giving her the personal care of the children, whilst the legal control of the persons and property of the minors was vested in A, who could as tutor, when he chose, remove them from her care.

APPEAL from the Probate Court, parish of East Feliciana. *Pipkin, J.* *W. F. Kernan* and *C. E. Schmidt,* for appellants. *K. A. Cross* and *F. D. Brame, Race, Foster & Merrick* for appellees.

Justices concurring: Ludeling, Taliaferro, Howell, Wyly, Morgan.

Morgan, J. Appellee moves to dismiss this appeal on several grounds, which we will consider in the order in which they are presented.

*First*—That there is no testimony in the record showing that the plaintiff was authorized to institute and prosecute this suit.

The husband joins the wife in the petition; this is sufficient authorization.

*Second*—That the appeal granted from the main action was a devolutive appeal, while the motion was for a suspensive appeal.

The fact is as stated; but if the appellant submits to this modification of his demand, the appellee, not being injured by it, can not complain.

*Third*—The testimony does not show that plaintiff was authorized by her husband either to institute the suit or to take the appeal.

We have already said that he authorized her to sue by joining her in the suit, and as the motion for appeal was made in the name of the husband and the wife, we consider the authorization to appeal sufficiently established.

*Fourth*—That the order of court does not fix the amount of the appeal bond in the injunction suit if suspensive.

The order of appeal does fix the amount of the bond. It is fixed at one hundred and fifty dollars, and the bond is made out in the name of the husband and the wife, and is signed by them both.

The motion to dismiss is therefore overruled.

## ON THE MERITS.

This is a suit instituted by the maternal grandmother of the minors Payne, issue of the marriage between A. G. Payne and plaintiffs' daughter, both deceased, to annul the last will of A. G. Payne, and to cause herself to be appointed tutrix to the children.

The will which is sought to be revoked is alleged to be a nuncupative will by public act passed before a notary public and five witnesses on the thirtieth March, 1872. It gives to his two children all the property of which he dies possessed, but burdens the one-third thereof with a usufruct in favor of Miss Annie Byrne, which is to last during her life, or until she marries; appoints D. C. Hardee his executor, giving him seizin of his estate; constitutes him tutor to his children, but gives the care of them to Miss Byrne. After the will was made, and two days before his death, he married Miss Byrne.

The grounds upon which the will is sought to be annulled are:

*First*—That it does not furnish proof that it was written by the notary in the presence of the testator; nor in the presence of the testator and of the witnesses, as required by law; nor can that fact be necessarily implied from any expression contained in the will.

*Second*—That it does not express that it was ever signed by the witnesses named therein, nor by any witnesses whatever, nor in whose presence it was signed; that the will, to be valid, should state expressly that the witnesses signed the same in the presence of the notary and of the testator; and that these facts can not be necessarily implied from any expressions contained in the will.

They allege further that the will is not valid as a nuncupative will by private act, because it was not read by one of the witnesses to the testator in presence of the other witnesses, as required by law.

Defendants excepted to the petition upon the ground that plaintiff had no right of action, she being in no sense an heir of the testator, or related to him by blood.

This exception was maintained as to plaintiffs' right to sue for a revocation of the will, except as regards her right to claim the tutorship of her grand children. From a judgment rendered against her the plaintiff has appealed, both upon the exception and the merits.

The ruling of the judge on the exception was correct. Not being an heir, she had no right to attack the will in so far as it relates to the

disposal made by the testator of his property. But she is entitled to the tutorship of her grand children, unless she has been legally deprived thereof. The will does deprive her of it. It is an obstacle to the assertion of her legal rights, and she is authorized to remove it, if she can. If the will is null, the appointment of the tutor falls, and the tutorship, by law, will come to her. She may, therefore, sue to annul it, in so far as it interferes with her rights.

We do not find it necessary to decide whether the will is valid as a will by nuncupative public act. Assuming it not to be—upon which point however we express no opinion whatever—we are all of opinion that it is good as a nuncupative will under private signature.

The will is as follows :

Be it remembered, that on the thirty-first day of March, 1872, at the residence of the Rev. Alexander Galbreath Payne, a resident of the Parish of East Feliciana, I, notary, repaired to his residence in said parish, for the purpose of receiving his last will and testament, when and where, I, Henry Hawford, Notary Public in and for said parish, duly commissioned and sworn, with George W. Munday, George H. Packwood, William A. Knapp, James G. D'Armond and William V. Broadway, five competent witnesses, males, of the full age of majority, residents of said parish of East Feliciana, came personally into the presence of said Rev. Alexander Galbreath Payne, and he dictated to me his last will and testament in the presence of the above named witnesses, and I received his dispositions in his own words in presence of said witnesses as follows :

*Item First*—I give to my children, William S. and Alexander G. Payne, all of the property of which I may die possessed, with the exception of one-third, which one third I give and devise to Miss Annie Byrne, in usufruct during her lifetime, unless she should marry after my death, in which case the usufruct shall expire.

*Item Second*—I hereby appoint Colonel David C. Hardee as executor of my last will and testament, and give him full seizin of my estate ; and I also appoint him tutor of my children. The care and management, and raising of my said children, I leave in the hands of Miss Annie Byrne. And it is my last will and wish that they be entrusted to her care and personal supervision.

And I, the said notary, received the foregoing testamentary disposition as dictated to me by said testator, in the presence and hearing of said five witnesses, residing in said parish and State. And I, the said notary, wrote the same as they were dictated by the testator in the presence of said five witnesses. And I then read the same in a loud tone of voice, in the presence of said five named witnesses, and in their hearing to said testator, Rev. Alexander Galbreath Payne, who declared the same to be his last will and testament, to me, notary, and

to said five witnesses, and in the presence of said witnesses (five), and in presence of me, notary, signed the same with his own proper signature.

All of which formalities were had and observed at one time, without interruption and without turning aside to other acts, on the day and date aforesaid, at the residence of the Rev. A. C. Payne, in Clinton, said parish. It is signed by the notary twice and by the witnesses therein named.

"A nuncupative testament, under private signature, must be written by the testator himself, or by any other person from his dictation, or even by one of the witnesses, in presence of five witnesses residing in the place where the will is received, or of seven witnesses residing out of that place." C. C. 1574.

. "The testament must be read by the testator to the witnesses, or by one of the witnesses to the rest, in presence of the testator. It must be signed by the witnesses, or at least by two of them, in case the others knew not how to sign." C. C. 1575.

This will was written by Henry Hawford, from the dictation of the testator, in presence of five witnesses other than Hawford. It was read by Hawford to the rest in presence of the testator. It was signed by the testator and by the witnesses.

It is objected that it was not written or read to the testator by a witness to the will. The objection is that Hawford, who wrote and read it was not a witness, but a notary. He is so designated in the will. But we know of no law which declares that a man, because he is a notary public, is not a just witness to a will, and we see no reason why he should not be. He was certainly a witness to everything which took place with regard to the making of the will, and all the law requires is that he should be a witness. The formalities required by the law are indispensable, it is true, to the proper making of testaments, but they are not snares and pitfalls by which the testator is to be caught, and into which he must necessarily fall when he attempts to do with his property what the law authorizes him to do with it. We are to sustain the will which legally disposes of a testator's property, if we can, and not to pick it to pieces by criticisms, to which almost every composition is subject; we think we can only destroy it when the law itself pronounces it to be null, and for the want of compliance with those formalities which are declared to be sacramental. In the present case we see nothing to indicate that the requirements of the law were not complied with. On the contrary, we think they were. It is further contended that the will is null because it, in point of fact, appoints a woman tutrix to the testator's children. That the law does not permit a woman to be tutrix except where they are the mothers or grandmothers of the children. But in

this case a woman was not appointed. D. C. Hardee was named. It is true the testator declared that the care and management and raising of his children should be left in the hands of Miss Byrne. This, however, is not appointing her tutrix; it is merely giving the children to her charge and management. Hardee testifies that when asked to assume the responsibility of tutor he declined, upon the ground that his own family was large and that he could not, in justice to his own,. add to his duties. To obviate this objection the personal care of the children was given to another. We do not see in this the appointment of a tutrix. We look upon it as a mere designation of a person who would be competent to care for and manage them. It was the testator's last will and wish that they should be intrusted to Miss Byrne's. care and personal supervision, but we do not consider this will and wish as differing in any manner from an expressed desire that they should be educated at a particular institution of learning. The test is, we believe, who has the legal control of the persons and property of the minors? The answer is, the tutor. Who is the tutor? D. C. Hardee. So long as he chooses to allow them to remain under the charge of Miss Byrne he may do so, but we imagine that if he wished to remove them from her care he could not be successfully opposed. On the contrary, we think he has the clear right to do so whenever he sees fit.

Another test would be this : Could Miss Byrne bind the minors in any manner? If she were to die, would the minors be without a tutor? These questions we think answer themselves in the negative, and dispose of the objections to the will on this point.

The judgment is affirmed.

Rehearing refused.