PROVOSTY, J.
On the 6th of April, Mrs. Anna Lewis, living at Yoakum, Tex., telegraphed to D. H. Holmes, the most fashionable millinery establishment of the city of New Orleans, as follows:
“Oan you make me five dresses by the seventeenth? Answer quick.” And D. H. I-Iolmes answered: “Yes, can make dresses by seventeenth, as wanted.”
Mrs. Lewis immediately shipped to D. H. Piolines, by express, the materials for the drosses, which had been bought from the D. H. Holmes establishment a few days before. On the 8th of April she wrote to D. H. Holmes, explaining that the dresses were for her daughter, who was to be married on the 19th, and that the dresses would have to be at Yoakum by the 17th, and insisting that D. H. Holmes let her hear from them at once. On the 12th ■ she telegraphed to D. I-L Piolines: “Wire me in regard to dresses at once.” On the 13th D. H. Holmes telegraphed to her: “Will ship wedding dress to-morrow, balance on the 19th.” On the same day she telegraphed to D. H. Piolines: “Daughter leaves 19th. Must have dresses before. Ship immediately. High water may delay arrival.” On the same day she telegraphed to the firm of Hoen & Duth, in New Orleans, her friends: “See Holmes. Hurry up my work. Lula leaves 19th. Must have dresses immediately.” D. H. Holmes answered by mail to the effect that they could not ship the dresses before the 19th, but that, if Mrs. Lewis preferred, they could ship them to the bride’s destination. On the láth D. H. Holmes shipped the wedding dress. It reached Yoakum on the 16th. The young lady was to marry a man of wealth and of high social standing, and she herself belonged to the same high social rank. On her wedding tour she was to visit the city of Mexico, and other cities, where entertainments in her honor were planned, and the dresses had been ordered in prevision of these functions. Ooming from the leading millinery establishment of the leading city of the South, the dress should have been a thing of beauty, delightful to a young bride to wear. It proved to be four inches too short in front, and, to use the words of the young lady: “It was just like wearing a short rainy-day skirt, with an immense train behind.” At this discovery the expectant bride was overcome by disappointment and chagrin. She had to be held up while her mother and two friends undertook to rectify the garment, and she took to her bed. What could be done w’as done, but the gown continued to be one inch too short in front, and the bride was ashamed to wear it, though forced by necessity to do so.
Mrs. Lewis telegraphed at once to D. H. Holmes: “Skirt four inches short. Length should be forty-three inches. See to others.” The next morning (the 17th) she telegraphed: “Do not ship other dresses until further notice.” But on the evening of the same day she telegraphed: “Send dresses to Yoakum not later than 19th, without fail.” On the next day (the 18th) D. H. I-Iolmes mailed the following letter:
“New Orleans, April 18th, 189-.
“Mrs. A. M. Lewis, Yoakum, Texas— Dear Madam: Through your telegram of recent date we learned to our surprise that the dress was found four inches too short. We followed measurements furnished by yourself in making it forty-two inches, hence we do not feel ourselves responsible for the mistake. As the telegram states the skirt is-four inches too short we will require for the other dresses forty-six inches. The quantity of material furnished will not make the dresses and the definite instructions which were expected have not been received, so^ we have stopped work until we hear from you more definitely concerning them.
“We enclose bill of telegrams, as we are not responsible for' the payment of same.
“Respectfully, D. H. Holmes.”
*1033 On the 25th Mrs. Lewis wrote to D. H. Holmes, telling him that if the dresses were not forthcoming they would be left on his hands; and on the 2Sth D. H. Holmes returned the dress goods as they had been sent' to them, without their having been even unfolded.
The bride, it seems, was counting • absolutely upon having the dresses, and found herself entirely unprovided for the entertainments incident to her wedding tour and to her arrival at the home of her husband in Louisville, Ky. Eor want of suitable dresses, she had to forego these entertainments, and to decline all invitations in the several cities she visited, and in fact to cut short her bridal tour; all to her great chagrin and mortification and humiliation. This suit is brought to recover damages for the breach of the contract to make and deliver the dresses.
The only excuse offered by D. H. Holmes for not having fulfilled the contract is that contained in the letter of the 18th, transcribed above, namely, that, as the wedding dress was 42 inches, and was 4 inches too short, the other dresses would have had to be made 46 inches, and that there was not enough material to make them of that length; in other words, that the telegram misled him. But the fact is that what misled him was his own erroneous impression that the wedding dress had been made 42 inches, when it had been made only 38 inches. His plain duty, under the circumstances, was to use the telegraph for obtaining further information. Besides, the telegram was received by him on the 16th, by which date the dresses should have been about ready for shipment, whereas the scissors had not yet gone into ’their materials. We think the contract was violated, and that the only question must be with reference to the amount of damages.
The law governmg the matter of damages in eases of this kind is found in article 1934 of the Civil Code, as follows:
“When the debtor has been guilty of no fraud or bad faith, he is liable only for such damages as were contemplated, or may reasonably be supposed to have entered into the contemplation of the parties at the time of the contract. By bad faith in this and the next rule, is not meant the mere breach of faith in not complying- with the contract, but a designed breach of it for some motive of interest or ill will.”
Although the general rule is that damages are the amount of the loss the creditor has sustained, or of the gain of which he has been deprived, yet there are eases in which damages may be assessed without calculating altogether on the pecuniary loss, or the privation of pecuniary gain, to the party. When the contract has for its object the gratification of some intellectual enjoyment, whether in religion, morality, or taste, or some convenience or other legal gratification, although these are not appreciated in money by the parties, yet damages are due for their breach. A contract for a religious or charitable foundation, a promise of marriage, or an engagement for a work of some of the fine arts, are objects and examples of this rule.
In the assessment of damages under this rule, as well as in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury, while in other cases they have none, but are bound to give such damages under the above rules as will fully indemnify the creditor, whenever the contract has been broken by the fault, negligence, fraud, or bad faith of the debtor.
No damages are demanded in connection with the wedding dress, the claim being-predicated exclusively upon the failure to furnish the four other dresses. In computing the damages the allowance must be restricted to what may reasonably be held to have been within the contemplation of the parties in entering into the contract. The contract was to furnish the dresses in time for the wedding on the 19th. D. H. Holmes must be held to have known that, if the dresses were not finished by that das'-, the bride would be keenly disappointed. Also that the bride would need the dresses for the festivities incident to her wedding and immediately following, for which it is customary for brides to provide themselves with a trousseau.
In gauging this disappointment of the bride the surrounding circumstances must, as a matter of course, be considered. And one of these is the fact that entertainments were planned, and that for want of the dresses these entertainments would have to be giv *1035 en up; and another is her humiliation in going to her husband unprovided with a suitable trousseau. We do not think that the amount of $575, fixed by the district judge, is excessive.
With the demand for damages plaintiffs have coupled a demand that D. H. Holmes be condemned to receive back the wedding dress and return the $78, the price thereof. Such as the dress was, it was accepted and worn. The proposition to return it, and get back the price, is therefore without merit.
Defendant excepted that he was not put in default, and that the petition does not allege that he was. The contract was one which, from its nature, could not be usefully fulfilled after the date fixed for its fulfillment. _ Putting in default was, therefore, under express provision of article 1933, Civ. Code, unnecessary. But, if it was necessary, defendant was put in default by the telegram.
The exception that the suit is not brought in the name of the proper plaintiff is without merit. The husband’s joining in the suit was a sufficient authorization of the wife. Lawes v. Chinn, 4 Mart. (N. S.) 388; Dunn v. Woodward, 11 La. Ann. 265; Evans v. De L’Isle, 24 La. Ann. 248; Succession of Payne, 25 La. Ann. 202; Jumonville v. Sharp, 27 La. Ann. 461. The contrary of this has never been held, and was not held in the case of Hayes v. Dugas, 51 La. Ann. 447, 25 South. 121. There the husband had not joined in the suit, but his presence in this suit had been sought to be supplied by an allegation on the part of the wife in her petition that her husband joined her in the suit. This allegation made by the wife was held not to be an authorization by the husband. As a matter of course, it was not. It was the mere ipse dixit of the wife, and not the act of the husband. In the instant case the husband himself joins in the suit, and it would be strange if the act did not amount to an authorization to the wife to bring the suit.
Both the husband and wife are parties to the suit, and the judgment will be res judicata as to both. Under these circumstances, we cannot see what concern defendant has with the question of whether the damage occurred before or after the marriage, or in Louisiana, or in Texas, or in Kentucky, or fell into the community of acquets and gains or not, or whether the wife or the husband was the proper person to stand in judgment in the suit. The exception of want of proper party plaintiff was, therefore, properly overruled.
There being sufficient evidence without the testimony of the wife or of the husband, or, indeed, of both, the question of the competency of these witnesses to testify need not be considered.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be affirmed.