No. 9731.
Orleans Appeal.

---

**MRS. AGNES GARNER v. JOSEPH BURNSTEIN**

---

(October 20, 1924, Opinion and Decree.)

---

*(Syllabus by the Court.)*

1. **Louisiana Digest, Damages, Par. 42.**
When the debtor has been guilty of no fraud he can be held liable only for such damages as may reasonably be contemplated as resulting from his default. Thus a milliner, who fails to deliver a hat for which he has been paid to a purchaser and thereby causes her to appear at a dinner party with an inappropriate costume, cannot be held liable in damages for the mental anguish of the purchaser without proof that the milliner was informed of the importance of the hat as a part of a special costume to be worn to the dinner or of some other fact sufficient to advise him of one consequence likely to follow his default.

(Civil Code, Art. 1934—Editor's Note.)

Appeal from the First City Court, Hon. Henry Renshaw, Judge.

This is a suit for damages for a breach of contract.

Judgment for plaintiff. Defendant appealed.

Judgment amended and affirmed.

Prentice E. Edrington, Jr., attorney for plaintiff and appellee.

Bernard Titche, Jr., attorney for defendant and appellant.

WESTERFIELD, J. Plaintiff purchased a hat from the defendant, who conducts a millinery establishment in this city, for the sum of $20.00. The hat was to be paid for on delivery or, as it is termed commercially, C. O. D. The hat was delivered as agreed upon by the negro porter employed by defendant and according to the positive testimony of plaintiff and a lady friend of hers, whom she was visiting, was paid for by handing the porter two ten-dollar bills. The porter returned to defendant's place of business and upon being asked for the money stated that no money had been paid him, and that he was induced to leave the hat by plaintiff stating that she had called at the hat shop of defendant earlier in the day and paid for the hat. Whereupon the porter was told to return to plaintiff's residence and get the hat or the money. The porter returned and finding plaintiff absent persuaded the servant to give him the hat and returned same to his employer. Upon plaintiff returning home and discovering her hat was gone she immediately repaired to the hat shop and demanded the hat, which the defendant refused to surrender unless she paid him the price. This plaintiff refused to do upon the ground that she had already paid for it. Thereupon plaintiff entered suit against defendant for $270.00; twenty dollars of which sum she claims to have paid defendant and $250.00 as consequential and punitive damages.

The first question for our consideration is whether the negro porter of defendant was paid for the hat and we have no difficulty in concluding that he was. Plaintiff

is corroborated in this regard by another lady and both swear positively and circumstantially that the hat was paid for with two ten-dollar bills given the porter of defendant. Payment to defendant's agent was payment to him and whether he got the money or not plaintiff should have had her hat. His refusal to give her the hat renders him liable to any damages which might be reasonably contemplated as resulting from his refusal to do so.

The rule of law is as stated in Article 1934 of the Civil Code:

"When the debtor has been guilty of no fraud or bad faith, he is liable only for such damages as were contemplated, or may reasonably be supposed to have entered into the contemplation of the parties at the time of the contract."

By bad faith in this and the next rule is not meant the mere breach of faith in not complying with the contract, but a designed breach of it for some motive of interest or ill will.

The damages claimed here are, so far as we can consider them (punitive damages not being allowable at all) said to be due to mental anguish caused by disappointment due to the fact that the hat was bought to be worn with a certain dress to a dinner party on the very evening it was to be delivered. Plaintiff went to the party, though she alleges in her petition that she was unable to do so because of the lack of a proper hat, but says she was unable to wear the dress for which the hat was bought, causing her deep humiliation, disappointment and distress. We are not inclined to treat her alleged state of mind on this occasion jocosely. It is said "The apparel oft proclaims the man". It more often proclaims the woman. Nature seems to have intended that the male should be more pulchritudenous. Witness the majestic beauty of the male lion as compared with the plainness of its mate and the beauteous plumage of the mallard drake as compared with the drab appearance of the duck. But man, at least modern man, has decreed otherwise and countless industries and hosts of individuals are devoted to the production of clothing, jewelry, feathers, powders and, we regret to say, paints designed exclusively for the ornamentation of the female form in an effort to "paint the lily". No Rubens or Van Dyke ever studied the colors of their masterpieces with greater care than the modern woman studies the color scheme of her costume, for the laws of modern convention, though subject to frequent change, are inexorable. Therefore, when the plaintiff in this case tells us that the yellow hat bought of defendant and that yellow hat alone was suitable for her new dress which she had bought for the dinner party and that not having the hat she was compelled to wear an inappropriate costume, to her great embarrassment, mortification and, yes mental anguish, we believe her. The only question is, could the defendant reasonably contemplate the result of his refusal to surrender the hat? He might be charged with knowledge of the intricate rules of feminine attire; indeed, his business is largely based upon the rigidity of these rules, and he must be held to be familiar with them, but he could not know the condition of the plaintiff's wardrobe, and since the record does not disclose that he was advised of the dinner dance and the special purpose for which the hat was intended, he cannot be charged with such knowledge, for it might well be, so far as defendant knew, anything to the contrary that plaintiff possessed a number of hats suitable for the occasion. In the case of Lewis vs. Holmes, 109 La. 1030, 34 So. 66, the defendant was held liable for damages caused by the disappointment of a bride in not having her trousseau properly made in time for the wedding and for social functions incident thereto. Holmes

made the dresses, but they were four inches too short and the bride could not wear them without embarrassment and mortification, thus preventing her from being properly attired at social functions given in he honor. But in the instant case we are not dealing with bridal robes, which in themselves impart a warning of their importance, but with a hat in itself suggestive of none of the consequences which have resulted here.

We conclude, therefore, that the judgment appealed from must be amended by reducing the amount awarded plaintiff to twenty dollars, and it is so ordered. Defendant to pay all costs.