(134 So. 749)

BOYKIN v. LOUISIANA PETROLEUM CORPORATION et al.

No. 30886.

April 27, 1931.

Warren Hunt, of Rayville, for appellant.

Cook & Cook, of Shreveport, for appellees.

ODOM, J.

Plaintiff alleges that in the year 1926, at the special instance and request of the defendants, he procured for them certain oil and gas leases on approximately 10,000 acres of land in Richland parish in what is known as the "Girard Pool," and that "the service rendered by your petitioner for the account and benefit of said defendants, as above alleged, is reasonably worth the sum of $10,000.-00, being the sum of one dollar per acre procured for defendants."

Plaintiff acknowledges receipt of $3,387.06 paid him and prays for judgment for the balance, $6,612.94.

Defendants disclaim any indebtedness whatever to plaintiff, and specifically deny that they employed him to obtain the leases for them, but on the contrary alleges that plaintiff, for his own account and benefit and

for the account and benefit of other landowners in Richland parish, obtained a number of leases in a block and induced them to take over said leases or block and drill two wells; that said leases were turned over to them to be drilled, the only consideration asked by plaintiff and the other landowners for said leases being the drilling of the wells to test the field. Defendants admit that after the wells were drilled and gas was found in paying quantities, they paid plaintiff certain sums as a mere gratuity, but that said sums were not paid as a consideration for his services in procuring for them said leases.

Plaintiff's demands were rejected, and he appealed.

Plaintiff bases his right of recovery solely upon the ground that these defendants employed him to procure or assemble for them certain oil and gas leases. Having based his right of recovery upon a contract of employment, the burden of proving the contract was upon plaintiff.

Plaintiff not only failed to prove that he was employed by these defendants to assemble these leases for them or that he procured them at their instance and request, but his own testimony and his letters show to the contrary.

On January 1, 1926, plaintiff wrote to these defendants that: "We farmers have a block of wild-cat acreage, say about 6,000 acres, and we want a man to take us over and drill a well for us and we will give a man the first year rental free and will cooperate with him in every way we can. Your name was handed me by Mr. J. Y. Cunningham, who said that we might get you interested with us in this proposition and to write you." Up to that time defendants had not considered operations in the Richland field.

On February 9 following, plaintiff again wrote defendants in part as follows: "I have your valued favor of the 6th inst., relative to the acreage we were offering you. After our talk over the telephone I got busy and notified all the land-owners that I could get to meet with us and I submitted your letter, and they all pledged enough to run between 5500 and 6000 acres, and we will get busy right away and get the leases signed up. There is quite a lot of 40- and 20-acre fellows in this block and it will take about a week, maybe a little sooner. But say by February 15 inst. sure and we will be, in a position to turn them over to you on the drilling contract you spoke of. I am very grateful to you for the interest you have shown to me and my people and any time I can be of any use to you don't fail to let it be known."

On February 15 following plaintiff wrote defendants saying: "I am glad to say we have it all signed up and are ready for you to come over and take us over and put as many wells down on it as you see fit."

On March 13 plaintiff again wrote defendants, in which letter he said: "I had an opportunity to place the leases before I got you interested, but as I told you, the parties did not appeal to me as being the proper caliber for us and felt sure that if I can induce you to take our acreage that our interest will be safe-guarded and will be satisfactory to all concerned, and since some of the parties who have been camping on my shirt-tail about the leases have phoned you, maybe they won't annoy me quite so much. I hope they won't at any rate. So that when the exigencies of your affairs will permit, come over and see what you think of the situation."

On March 27 he wrote defendants another letter stating in substance that inasmuch as they had not visited the territory and had not written that they would accept his offer; "these two facts are leaving us to believe that you are not much interested in our proposition."

Plaintiff continued to write defendants until June, importuning them to take over the block and drill there. He was so insistent that defendants wrote him on one occasion that it was by no means certain that they would accept the proposition to take over the block of leases and develop them, and that if plaintiff could find some one else who would do so, it would be entirely satisfactory with them to let the matter drop.

The correspondence above referred to and testimony taken on trial of the case show that plaintiff, who owned approximately 450 acres of land in Richland parish which was undeveloped, wildcat territory, was extremely anxious to have some one develop the field, and that he and others agreed to pool their leases and offer them without consideration to any one who would agree to drill two wells in order to test the field. Correspondence and the testimony further show that at no time had these defendants solicited the services of plaintiff or agreed to pay him any amount whatever. There is nothing to show that plaintiff expected to receive anything for his activities in trying to have this field developed except the benefit which would flow to him as a landowner on account of the discovery of oil or gas.

That plaintiff was not representing defendants when he procured the leases is shown by his own testimony. He said, "I. was representing myself and others in getting up that acreage, in getting this development."

Mr. W. E. Hall and Mr. Curtis, who represented the Louisiana Petroleum Corpo-

ration, went to Richland Parish in July, and after interviewing plaintiff and other landowners, entered into an agreement, as evidenced by contract dated July 15, to the effect that if plaintiff and his associates would obtain leases on approximately 10,000 acres of land defendants would drill two wells, and they put up $5,000 as a forfeit. Up to the time this agreement was entered into nothing had been said by plaintiff to defendants with reference to compensation for his services. But subsequently plaintiff asked Mr. Hall if it was not customary in cases like this to remunerate in some way the one who had been instrumental in getting up the block. Hall told him that in some cases that was done and that in case they found oil or gas in paying quantities defendants would be willing to pay him something. According to plaintiff's own testimony, he did not at that time claim that he had been employed by defendants to secure the leases. Defendants brought in two gas wells and thereafter sold a portion of the leases which had been turned over to them at considerable profit. They paid plaintiff something over $3,000, which was 5 per cent. of the net profits made. Mr. Hall testified that during the time his company was developing the field, plaintiff and his wife were very courteous to him and his associates, that they used plaintiff's store as an office, used his telephone, and frequently dined with plaintiff and his wife, and that he and his associates felt very kindly towards them, and for that reason the company paid plaintiff five per cent. of the net profits made.

All the testimony shows, however, that this payment was not made on account of any contract of employment.

The judgment appealed from is correct, and is accordingly affirmed, with all costs.