Emile B. Doll, a real estate agent, brought this suit against the Firemen's Charitable and Benevolent Association of New Orleans for a commission of $610, as the alleged consideration for the procurement by Doll of a lessee of defendant's property under a ten-year lease. The amount claimed represents five percent of the total rental of $12,200, which is said to be the usual commission.
Defendant admitted the execution of the lease with the Albert Weiblen Marble Granite Company, Inc., hereinafter called the Weiblen Company, a corporation procured by plaintiff, but averred that there had never been any contractual relations with Doll who, at all times, acted in the transaction as the agent of the lessee.
There was judgment below in favor of defendant dismissing plaintiff's suit and he has appealed.
Counsel in argument and in brief insists that plaintiff's claim is based upon a quantum meruit and his petition is consistently drawn, but Doll himself repeatedly testified that there had been an express oral agreement with defendant to pay him the commission in the amount sued for. Be that as it may, the present position of plaintiff is that there was a quasi contract resulting from the negotiations for the leasing of the defendant's property which entitles him to recover on a quantum meruit.
Plaintiff, who had been in the real estate business for more than thirty years, approached the defendant in the interest of the Weiblen Company for the purpose of leasing a part of their vacant property on City Park Avenue in the City of New Orleans. After some controversy the following offer was sent to the defendant by the Weiblen Company:
"June 24th, 1940
"Mr. T.J. Collins, President "Firemen's Charitable Benevolent Assn., "609 Common Street, "New Orleans, La.
"Dear Mr. Collins:-
"We offer to pay, for the lease of a space belonging to you and lying between Newsham Floral Shop and Gately, but *Page 157 
nearest to Newsham, One Hundred Dollars per month for ten years, with the privilege in us to renew for five years more on the termination of the ten years. The space is one hundred feet front by one hundred fifty feet in depth.
"The other terms of the lease are to be agreed on by conference between your and our representative and will be incorporated in the lease. A suitable and attractive building, to cost between $4,000.00 and $5,000.00, plans and specifications for which will be submitted to you, is to be erected by us on the property and is to become your property on the termination of the lease. Taxes and insurance are to be paid by us.
"Yours very truly,
"Albert Weiblen Marble Granite Co. Inc.
"(Signed) Albert Weiblen "President
"Witness: "(Signed) Emile B. Doll."
The offer was satisfactory to defendant and, on July 5th, 1940, a written contract of lease, in conformity with the offer, was signed by the parties. In September, 1940, Doll sent the defendant a bill for his commission, payment of which was refused.
The position of the defendant is that Doll represented the Weiblen Company and no one else in the transaction, consequently, no commission is due him.
As we have pointed out counsel for plaintiff contends that defendant owes Doll the commission on a quasi contract on the basis of a quantum meruit. There is some expert testimony in the record to the effect that the owner of the property usually pays the real estate agent's commission in matters of this sort but, it is said, in any event having had the benefit of plaintiff's services defendant must pay their proper value. Kernaghan 
Cordill v. Uthoff, 180 La. 791, 157 So. 595; Blasini v. Charbonnet, 10 La.App. 629, 121 So. 205; Baker v. Stoutmeyer 
Co., 2 McGloin 61; Mason v. Dry Hand Mop Co., No. 8528 of the docket of the Court of Appeal for the Parish of Orleans (not reported, see Louisiana and Southern Digest.).
The cases relied on are not in point, since they merely go to the extent of holding that where one avails himself of the services of a real estate agent for the purpose of accomplishing the sale or rental of his property he is bound to compensate him and, this is true, whether there exists a written contract to that effect or whether the real estate agent sought the employment or the owner sought the agent.
In the case at bar Doll went to the office of the defendant and spoke to its president and vice-president about selling or leasing a part of its land and was informed that it would only lease a plot one hundred by one hundred and fifty feet for $100 per month, whereupon Doll "got in touch with my principal" with the result that the lease was subsequently confected. It will be noted that in Weiblen's letter reference is made to "our representative" conferring with the defendant and the letter is witnessed by Emile B. Doll.
In our opinion the defendant was justified in believing that it was dealing with an agent of the lessee who had been employed to find a suitable place for the erection of a building for use in connection with its business. No matter what the custom in the real estate business might be we see no reason why there should not be an exception in cases like the present, where the broker represents only one party to the transaction. Moreover, it is also shown by the expert testimony in the record that it is customary to use printed forms of contract obligating the owner or lessee, or both, as the case may be, to pay the commission of the real estate agent. This was not done in this case though Mr. Doll is shown to have been in the business for more than thirty years. His repeated statements about having been employed by the defendant under an oral agreement to pay him five percent. of the total of the rentals covering the ten years which the lease was to run is not supported, but denied, by the officers of the defendant company who were said to have agreed to it. Although he has now abandoned the contention that there was an express agreement to pay him a commission, plaintiff's retreat from the strong position he once held so vehemently and persistently cannot be effected without loss of credulity. Ellis v. Kolb et al., La.App., 196 So. 89. The truth is that there was no agreement express or implied.
In Jonas Co. v. Itzkovitch Copeland, 9 Orleans App. 168, it was said:
"It is settled law that before a legal charge can be made, there must be a contract of employment, either expressly made, or logically implied from the facts and that *Page 158 
no one can claim compensation from one who did not employ him, however beneficial or valuable the services may prove to the latter. [Succession of Kernan], 105 La.[592], 604 [30 So. 239]; [Le Corgne v. Garner], 7 La.App. 148."
In Succession of Kernan, 105 La. 592, 30 So. 239, 244, we read:
"No one can legally claim compensation for voluntary services to another, however beneficial they may be, nor for incidental benefits and advantages accruing to him on account of services rendered to another by whom he was employed. Before a legal charge can be sustained, there must be a contract of employment, either expressly made, or superinduced by the law on the facts."
In Standard Electric Construction Co. v. Electric Appliance Co., 170 La. 567, 128 So. 517, 519, the court said:
"Plaintiff company must prove with legal certainty a verbal contract for a 10 per cent. commission in this case, and cannot be permitted to recover on a mere quantum meruit, or upon any proof of custom of the trade as to allowing a commission in such cases."
In Boykin v. Louisiana Petroleum Corporation, 172 La. 574,134 So. 749, our Supreme Court said:
"Plaintiff bases his right of recovery solely upon the ground that these defendants employed him to procure or assemble for them certain oil and gas leases. Having based his right of recovery upon a contract of employment, the burden of proving the contract was upon plaintiff".
In Ruling Case Law, Volume 4, page 299, Section 43, we read:
"The calling of a broker is not preferred in the eyes of the law to that of other occupations, and he is no more entitled to remuneration for services voluntarily rendered without any employment, express or implied, than any other member of the community. While a contract of employment may be implied from subsequent acts of ratification on the part of the alleged principal, to warrant the inference of a previous request, the owner must say or do something tending to prove that he accepted the broker as his agent in the matter, something more than merely selling to the party whom the broker, while acting as a volunteer, brought to him * * *".
See, also, Rosenthal v. Cangelosi, La.App., 164 So. 502.
Our conclusion is that the judgment of the trial court dismissing the plaintiff's claim was correct, consequently, and
For the reasons herein assigned, it is affirmed.
Affirmed.
JANVIER, J., absent, takes no part.