[1] In the above case, the plaintiff seeks to recover a commission of $500 from the defendant as a broker procuring a purchaser for defendant's property. After a careful review of the records in this case and that of the companion case of Melson against the same defendant, 23 So.2d 364, we cannot say that the trial judge was in error in rejecting the demands of this plaintiff for a commission on the sale of defendant's home, or in procuring the contract with Melson to purchase the place.
The defendant had rented his home to a party who had an option to purchase it at any time before the expiration of the lease in August, 1943. Doiron and his agents knew that defendant's home was for sale, but it was not formally listed with this broker for sale, and up to the time of the Melson offer, it does not appear that the broker had listed or made any special effort to secure a purchaser for the property. This is evident from the fact that the broker did not even know the terms that defendant wanted for the sale of his property until the Melson offer came into the picture.
Doiron was handling the sale of the Melson home as well as the sale of the home of the prospective purchaser of the Melson property. In order to close these two sales it was necessary for the Melsons to have a place into which they could move after they sold their home. They told Doiron and his agents that they wanted defendant's home and had the agent draw up and submit their offer to the defendant.
There is a conflict in the testimony as to the agreement between the Doiron agency and defendant relative to the proposed sale to the Melsons. A member of the Doiron firm testified that in the first conversation he had with defendant, it was agreed that the selling price of the property was to be $10,500, and the defendant was to get $10,000, and the broker was to get $500 as his commission; that he prepared the Melson offer and submitted it to the defendant in the latter part of March in the presence of A.M. Palmer who was an agent of the real estate firm; that a few days later, the defendant asked him to get the Melsons to extend their offer a few days so that he might make some arrangements with the tenants in the property who had an option to purchase it. The extension was obtained, and within a few days defendant sent to Doiron his written acceptance of the Melson offer and Doiron procured the written concurrence of the Melsons. At the time the Melsons signed the offer to buy defendant's home they made a deposit with Doiron of $200 as a part payment on the purchase price. Doiron did not turn over this deposit to defendant, but returned it to Melson after the deal fell through.
Palmer, who was working for the real estate firm, testified along the same lines as did Doiron relative to the Melson offer and the agreement of defendant to pay a commission, except that he went a little further and stated that the defendant only wanted ten thousand dollars net to him and he did not care how much the agent got over that amount. Palmer also stated that he had contacted some people other than the Melsons with a view of selling defendant's property; that his firm as well as other real estate firms had been trying to sell the property for the defendant.
The defendant emphatically denied that he ever agreed to pay Doiron a commission for the sale of his property. He stated that when Doiron and Palmer talked to him about the Melson offer, he understood that they were representing the Melsons. He denied that the question of a commission was discussed. He admits accepting the offer, and explained that he thought at the time that the parties in his house had defaulted and thus broken their option to buy, but it later developed that he was *Page 368 
compelled to comply with the option and sell the property to these tenants. Defendant's testimony relative to his conversation with Palmer about the Melson offer and the terms of the sale is corroborated at least in part by the testimony of his wife.
In our opinion, the fact that the Doiron agency had made no special effort to sell defendant's property and did not know the selling price until the Melsons indicated a desire for the place as a home, indicates that Doiron was primarily interested in selling the Melson home out of which he would receive a commission, as well as the home of the prospective purchaser of the Melson property out of which he also received a commission.
[2] In order for a broker to recover a commission on the sale of property, he must prove that there was either an express or an implied agreement on the part of the owner to pay a commission. Without such proof, the broker cannot recover compensation for his services, although his services might have resulted in benefit to the owner. Doll v. Firemen's Charitable and Benevolent Association, La. App., 8 So.2d 156.
For the reasons assigned, it is ordered that the judgment appealed from be and the same is hereby affirmed.