The plaintiff, Melson, sued the defendant for damages in the sum of $2,233.25 for the breach of a contract whereby defendant had agreed to sell his home to plaintiff for the sum of $10,500. The items of damage are listed as follows: $140 paid as commission for procuring a loan from an insurance company to pay part of the purchase price for the property and $93.25 for legal services and expense connected with the proposed sale, together with a claim for $2000 for disappointment and inconvenience occasioned him by reason of the breach of the contract of sale on the part of the defendant, but this item was reduced to $1000 in the district court before judgment was rendered.
The trial judge rendered a judgment in favor of the plaintiff for $877, from which judgment the defendant appealed, and the plaintiff filed an answer to the appeal asking that the judgment be increased to the sum of $1233.25.
Another suit growing out of the same transaction was filed by the broker who claims to have procured the sale of defendant's property entitled J.T. Doiron, Realtor, v. Doyle Woodruff,23 So.2d 366, in which suit the broker claims a commission of $500. The two suits were consolidated for the purpose of trial, and, by stipulation of counsel, the costs were equally divided in the two cases. The trial court rejected the claim of Doiron for a commission on the sale, and he appealed from this judgment of dismissal.
The defendant does not deny that on April 10, 1943, he signed an agreement to sell his home in Baton Rouge to Mr. and Mrs. Charles A. Melson for the consideration *Page 365 
of $10,500 cash, provided the said amount was paid to him and the deed passed within forty five days from that date, delivery of the property to be made on or before August 11, 1943. Neither is it denied that within the forty five days, that is, on May 10, 1943, the defendant sold the property to another person for the same consideration he had agreed to sell it to the Melsons, and without getting any release from the latter under the contract to sell to them.
[1,2] As the defendant admittedly breached his contract to sell the property, and plaintiff Melson made a proper tender to perform on his part, the latter is clearly entitled to recover the damages sustained by him as a result of the breach of the contract by the defendant. The amount of loss sustained by this plaintiff and the method of estimating the damages claimed for disappointment and inconvenience are the most serious questions in the case. The trial judge found that plaintiff had paid or incurred the following expenses: $112 commission paid an agent to secure a loan from an insurance company with which to meet part of the purchase price of the property, and notary fees of $15 for drawing the deed. These items are the only ones that plaintiff has shown with legal certainty that he paid or incurred. There is some testimony about a bill from a title guarantee company for $78.25 and a bill of $15 for making a survey of the property, but the evidence relative to these two bills is too uncertain to permit of their allowance. From the testimony of plaintiff it could be inferred that the payment of $112 which he made to the insurance agent was to cover the examination of the title and the survey, as well as the commission for procuring the loan. In any event, there is not sufficient evidence in the record to show any expenses paid or incurred by plaintiff other than those allowed by the trial judge.
Plaintiff was awarded $750 for the item of damage claimed for the disappointment and inconvenience caused from defendant's breach of his contract to sell his home to him, and plaintiff is asking that the award for this item be increased to $1000. There is no definite proof to show any monetary loss sustained by plaintiff by reason of defendant's breach of his contract other than the expenses above mentioned, but plaintiff is basing his right to recover for this item on the provisions of paragraph 3 of Article 1934 of the Civil Code, which provides that where the contract has for its object the gratification of some intellectual enjoyment, whether in religion, morality or taste, or some convenience or other legal gratification, although these are not appreciated in money by the parties, yet damages are due for their breach, and in fixing these damages much is left to the discretion of the judge or jury as in cases of offenses, quasi-offenses and quasi contracts.
From the record it appears that Melson and his wife were put to considerable inconvenience and discomfort because of defendant's failure to comply with his contract. The Melsons desired to sell their home on the Perkins Road, and they liked the defendant's place, although they had not actually inspected the premises. They had placed their property in the hands of Doiron, the real estate broker, for sale, and the broker had found a purchaser for the Melson home, but the Melsons would not consent to close the sale of their home until they were assured of another place. The real estate broker knew that defendant's home was for sale (if he was not defendant agent's to sell it) and at the suggestion of the broker a letter was signed by the Melsons addressed to the broker offering to purchase the defendant's home on the terms already mentioned. This offer was submitted to the defendant, and was subsequently accepted by him in his letter of April 10th already referred to. As soon as defendant accepted their offer, the Melsons proceeded to close the deal for the sale of their home which the agent had sold for them to J.N. Cazayoux, the deed being passed on April 24th, some two weeks after the defendant had signed the agreement to sell the Melsons his home.
The Melsons relied in good faith on the contract with the defendant, and not only sold their home, but arranged to secure an apartment in which to live until August when they expected to get possession of defendant's place according to the contract which defendant had signed. When they found out that defendant had sold his place to another person and they would not be able to get possession of defendant's home as expected, they were forced to buy a temporary home on Ferndale Avenue which was not what they wanted and which they did not like. After living in this smaller house for two or three months they sold this house for about what it had cost them and bought another home on *Page 366 
University Avenue to which they moved and with which they are well pleased. So that it will be seen that the inconvenience which the Melsons suffered on account of defendant's breach of contract was the extra move into the smaller house on Ferndale Avenue where they were required to live for two or three months, and then to move from that house to their present location.
No doubt the Melsons were disappointed in being unable to get defendant's home. They were also put to some inconvenience by having to buy, move to, live in, and move from a smaller house which they did not desire. There is nothing to show how much expenses or losses were incurred by reason of this extra moving and inconvenience from a pecuniary standpoint, and it is conceded that the right of plaintiff to recover damages for this item must be based on the provisions of the above mentioned article of the Civil Code.
[3] The Melsons would not have sold their home and placed themselves in the position of being without a comfortable place in which to live had they not relied in good faith on defendant's written promise to sell them his home. The contract was more than a mere business transaction between the parties whereby one person agrees to sell another certain property and then violates his agreement. The contract had for its object the gratification of some intellectual taste and convenience on the part of the Melsons, and it was reasonably within the knowledge of the defendant and in the contemplation of the parties that this home was being bought by the Melsons not with the idea and purpose of an investment or for pecuniary gain, but primarily for the purpose of securing a home which was especially suited to their taste and convenience.
[4] The Civil Code of this State does not provide for the infliction of exemplary or punitive damages on a person for the violation of a contract, but it does provide for the imposition of damages for the breach of certain kinds of contracts where the loss cannot be fixed in dollars and cents, and the parties who enter into such contracts are presumed to have in contemplation the disappointment, discomfort and inconvenience that will be suffered by one of the parties if the other fails or refuses to do what he has agreed to do. In the case of Lewis et al. v. Holmes, 109 La. 1030, 34 So. 66, 61 L.R.A. 274, the court approved an award of $575 to the parents of a bride for disappointment and mental suffering occasioned by the failure of the defendant to furnish a wedding trousseau for the bride in accordance with an agreement. While it could not be claimed that the disappointment occasioned by the failure of the Melsons to secure the home with which they were so well pleased could be compared to the disappointment occasioned to the parents by reason of their inability to furnish their daughter with a wedding trousseau befitting her station in life, yet there is considerable similarity in the nature of the two disappointments.
[5] We have decided to reduce the amount of the award for this item of damage from $750 to the sum of $500. This amount is more than nominal damages (which could be awarded without any proof of pecuniary loss), and we think this award will do justice by the parties.
For the reasons assigned, it is ordered that the judgment appealed from be amended by reducing the amount thereof from the sum of $877 to the sum of $627, and as thus amended, the judgment is affirmed; plaintiff to pay the cost of the appeal, and all other costs to be divided equally between the parties in accordance with the judgment of the district court.