Plaintiff, a real estate broker, filed this suit to recover a commission on the sale of the home of defendant Reed. The sale was made by Reed to Touchton on September 25, 1944, for a consideration of $4,200, the commission being based on 5 per cent of that amount.
The plaintiff bases his claim on an agreement on the part of Reed to pay the commission, or in the alternative, on a quantum meruit for services rendered in making the sale. Touchton is joined in the suit on the theory that he conspired with Reed to defraud the plaintiff out of his commission. The defendant Reed filed an answer denying that he ever agreed to pay a commission for the sale of his home and denied any collusion with Touchton to defraud plaintiff out of a commission. He sets out in his answer his relations with plaintiff regarding the deal. Touchton did not file an answer, and a preliminary default was entered against him and the evidence taken on the trial of the case between plaintiff and Reed was to apply on the confirmation of the default against Touchton. The trial judge dismissed plaintiff's suit as to both defendants. Plaintiff has appealed.
It appears from the evidence that Touchton was about to be put out of his apartment and was anxious to get a house. He called on plaintiff with that object in view. Reed had also contacted the plaintiff with a view of buying another place, known as the Sibley place. Reed had discussed with the real estate broker the terms on which he would sell his home. He claims that he stated to plaintiff's agent that he would have to have $4,200 net for his home if he bought the Sibley place. Plaintiff's agent testified that he told Reed his place would net him around $4,000 (after allowing for the commission).
While the matter was in this situation as between plaintiff and Reed and before the latter had decided to buy the Sibley place, Touchton contacted plaintiff to see if the latter could get him a place. The plaintiff thereupon, on September 9, 1944, drew up an offer from Touchton addressed to plaintiff wherein the former made an offer to purchase Reed's place for $4,200, payable $1,500 cash, and the balance to be financed through a local lending institution. Touchton made a deposit with the broker of $200 to apply on the purchase price. Reed called at the broker's office late that day and signed an acceptance of Touchton's offer, and a day or so after the offer had been made and accepted Reed and Touchton, with an agent of plaintiff, called on a loan company to see about financing the deal. The loan company would not put up the entire difference between the cash payment of $1,500 and the purchase price, *Page 631 
but did agree to loan $2,200 instead of $2,700 on the property.
This was the situation when Reed and his wife decided that they did not want the Sibley property, and some three days after he had signed the offer of Touchton to purchase his home, he notified plaintiff that the deal for the Sibley place was off and requested plaintiff to return all papers to him. Plaintiff returned to Reed his contract. The loan company would not finance the purchase of the Sibley property by Reed nor would it advance the full amount necessary to enable Touchton to purchase the Reed property on the terms stated in his offer.
There does not seem to be much dispute about the fact that the offer of Reed to sell his home was contingent on his purchasing the Sibley place, and the parties so understood it. Reed told Touchton that he had called off the deal for the Sibley property, and on September 19th, Touchton wrote a note to plaintiff asking the broker to return his signed offer and deposit for the purchase of the Reed property as he had been advised by Reed that the deals were off. Plaintiff complied with this request and returned the contract and deposit to Touchton (the deposit never having been delivered to Reed).
Assuming that up to this point all parties were in good faith, there was then no binding agreement among any of tfie three parties, Reed, Touchton and plaintiff. A few days later Reed moved out of his home and rented another place, and a few days thereafter, Touchton, learning of this fact, renewed his offer direct to Reed to purchase his home for the same consideration. The offer was accepted by Reed, and on September 25th, the transfer was made by Touchton paying $1,500 cash and giving his unsecured note for $500, and the same loan company which had previously contacted put up the balance of $2,200. When plaintiff learned of this sale, he demanded his commission from Reed and on his failure to pay it, this suit followed.
If the evidence justified the conclusion that Reed and Touchton conspired to defeat any claim for a commission which plaintiff had for bringing the parties together the first time, there might be some merit in plaintiff's claim. However, there is nothing on which to base such a conclusion. The evidence rather indicates that all parties looked upon the purchase by Reed of the Sibley place on which plaintiff would have gotten a commission as the main contract between plaintiff and Reed, and the offer by Touchton was only an incident to that deal.
[1, 2] While the sale from Reed to Touchton was for the same consideration as that fixed in Touchton's previous offer through plaintiff, the terms of payment were different. As we held in the case of Doiron v. Woodruff, 23 So.2d 366, in order for plaintiff to recover a commission on this sale, he must show that Reed either expressly or impliedly agreed to pay him a commission on the sale, even though the efforts of plaintiff might have been beneficial to Reed in originally bringing about the situation which finally resulted in the sale. The evidence is not sufficient to show an express agreement on the part of Reed to pay a commission for the sale of his home in connection with the deal for the Sibley property, which deal fell through, nor can an implied agreement be inferred on his part to pay a commission from the circumstances connected with the transaction as a whole. It is not even contended that Touchton agreed to pay a commission on this sale.
For the reasons assigned, the judgment appealed from is hereby affirmed at the cost of plaintiff in both courts.