**GULF REFINING CO. v. ATCHISON et al.**

No. 13558.

United States Court of Appeals
Fifth Circuit.

May 2, 1952.

Rehearing Denied June 20, 1952.

Melvin Evans, Otis J. Dillon, Frederick E. Greer, Shreveport, La., for appellant.

Sam Monk Zelden, New Orleans, La., for appellees.

Before HUTCHESON, Chief Judge, and RUSSELL and RIVES, Circuit Judges.

RUSSELL, Circuit Judge.

Appellees, Mabel Atchinson and her husband, Bosco Franicevich, brought this action against appellant and American Employer's Insurance Company to recover damages for personal injuries alleged to have been suffered by them as a result of an altercation perpetrated by Jack Grammer, an employee of appellant, and Charles Conetti and Louis Mistich, deputy sheriffs of Plaquemines Parish, Louisiana. American Employer's Insurance Company was

subsequently dismissed as a party defendant, Atchison v. Gulf Refining Company, 5 Cir., 174 F.2d 476, and the case proceeded to trial against appellant. The case was tried to a jury which returned a verdict for appellees and judgment was entered accordingly. Appellant prosecutes this appeal contending that the verdict and judgment are contrary to the evidence and the law.

The facts supporting the plaintiff's case, which the verdict evidences the jury accepted and believed, disclose that on the evening of July 29, 1947, Bosco Franicevich was sitting on the front porch of his combination residence, grocery store and bar, located in Ostrica, Louisiana, when he noted the approach of appellant's truck traveling over a roadway which passed immediately in front of his building.[1] Franicevich, complaining that appellant's trucks were destroying his property, his steps and his porch, stepped from his porch and instructed the driver of the truck to stop the truck and to refrain from passing over the right-of-way. The driver contacted Grammer, appellant's Superintendent of Transportation, who was in a nearby building, and told him that the truck had been stopped. Grammer telephoned the local sheriff's office, and in response to his call two deputy sheriffs, one armed with a pistol and the other armed with a machine gun and a pistol, arrived at the scene about 45 minutes later. When the deputies arrived, Bosco Franicevich was inside the building. One of the deputies walked up to the door of the building and asked him why he stopped the truck. When he replied, the deputy said, "Bosco, this truck is going through, regardless. They've got to go through." Whereupon, the truck was allowed to pass, the two deputies and Grammer escorting it down the roadway to a levee. The three men then returned to the building.

During this time Bosco Franicevich remained in his barroom, standing near a window. As the three men approached the building he heard Grammer say to the two deputies, "Best thing to get him out, then shoot him." He was then ordered to come out of the building. At that time the two deputies and Grammer were standing outside the door of the barroom and all of them were armed, Grammer having been given a pistol by one of the deputies. Grammer was urging that they, "Get him; Shoot him. Get him."

At the time the initial events transpired Mabel Franicevich was lying across a bed in the back room. Her attention was attracted by the conversations and she got up and went into the barroom. Mark Franicevich, appellees' 11 year old son, was in the room and was pleading with his father not to go outside. There was a further exchange of conversation among the parties which reached its climax when Conetti shouted for Bosco to come out, stating, "Move your wife and kid out of the way or we'll let you have it through the door."

At this point, Dominick Massa, a friend of appellees who had witnessed the entire transaction and who was standing outside the building, interceded. As the witness expressed himself, "When I see they maybe start to shoot, I figured they might shoot me, too; best thing to try to talk them out of it." He said, "That man never done anything bad what I see, no reason to shoot the man. If you want to, go get him." When one of the men expressed fear that Bosco might be armed, Massa agreed to enter the room first and allow them to follow him. This was accomplished without event. Thereafter the matter of the movement of trucks across the right-of-way was discussed and the three men departed.

At the time these events transpired Mabel Franicevich had been in a state of pregnancy for four or five months. After the altercation was over she had a severe headache and pains across her back; she went to bed, but slept very little. About noon the next day, July 30, 1947, she began hemorrhaging, and at approximately 3:00

---

1. Both appellees and appellant claimed a right of dominion over the roadway by virtue of leases owned by the respective parties. However, appellant had used the right-of-way for passage of its vehicles since 1940, prior to the time appellees acquired their interest in the lease. Upon the trial the question of superior right or title was not developed.

or 3:30 A.M., July 31, 1947, she suffered a miscarriage. From that time until November 5, 1947, the hemorrhaging continued despite the medical treatment she received. On the latter date an abdominal total hysterectomy and appendectomy was performed on her.

Appellant contends that the trial Court erred in denying its motion to direct a verdict at the close of the evidence, in denying its motion for judgment notwithstanding the verdict and in failing to grant its alternative motion for a new trial. In support of these contentions, appellant relies upon the following propositions:

"Louisiana law does not allow damages resulting from shock caused by concern for another;

"Louisiana law does not allow one who provokes a difficulty to recover damages for injuries resulting from such difficulty;

"Issues or counts tendered in a complaint unsupported by substantial evidence should not be submitted to the jury over defendant's objections."

■ As a predicate for its first proposition, appellant construes the complaint to allege that the physical injuries suffered by Mrs. Franicevich with the resultant pain and suffering were caused solely by her concern over the safety of her husband. The evidence clearly discloses, however, that Mrs. Franicevich was as much a victim of the assault as her husband was. She was in the room with him facing the weapons held in the hands of the men standing outside the door. She was frightened and emotionally disturbed by the events which transpired and screamed and pleaded with her husband not to go outside. Conetti's instruction to, "Move your wife and kid out of the way or we'll let you have it through the door" was as much a threat against Mrs. Franicevich as it was against her husband. The tempo of the affair is illustrated by Massa's statement that he feared that he would be shot and the testimony of Brown, who was in the barroom at the time, to the effect that he thought there was going to be shooting.

■■ It is further contended by appellant that the evidence does not support appellees' allegation that the miscarriage and subsequent loss of ability to have children had any causal connection with the altercation. The trial court properly submitted this issue to the jury with instruction, requested by appellant, that if it should find from the evidence that the miscarriage and subsequent operation performed on Mrs. Franicevich resulted from a pre-existing condition and was not connected with the events complained of, then it should find for the appellant. The evidence disclosed that Mrs. Franicevich was suffering from a condition which made her more susceptible to a miscarriage and one which might have ultimately caused her to undergo surgery. This fact, however, does not preclude her from recovering damages for injuries resulting from the acts complained of, since a *tortfeasor* must take his victims as he finds them. Valence v. Louisiana Power & Light Co., La.App., 50 So.2d 847; Delpido v. Colony, La.App., 52 So.2d. 720.

■ Appellant urges as its second proposition that Bosco Franicevich is barred from recovering damages because he provoked the altercation. As the facts show, Bosco was the aggressor only to the extent that he told the truck driver that he could not pass over the right-of-way. Although there is evidence to the contrary, the preponderance of evidence is to the effect that this was done peaceably and without force. It is true that he might have reasonably expected appellant, through its agents, to negotiate the passage of the truck, however, he had no reason to foresee the events which followed. Furthermore, after the truck was allowed to pass, he was inside his barroom and displayed no disposition to further pursue the matter. The matter was not allowed to rest, however, but was resurrected when Grammer suggested they "get him out, then shoot him." It is clear that the original difficulty had terminated and the events which followed were instigated and encouraged by Grammer. See Ogden v. Thomas, La.App., 41 So.2d 717; Randall v. Ridgley, La.App., 185 So. 632. This issue was submitted to the jury with instruction that one who is in

fault as the offender and aggressor in an altercation cannot recover for the injuries inflicted on him, although the defendant may not be justified in law for his conduct. Since, under the facts in this case, it cannot be said as a matter of law that Bosco's conduct provoked the altercation or that the subsequent action of Grammer and his accomplices was warranted, Oakes v. H. Weil Baking Co., 174 La. 770, 141 So. 456, the question was properly submitted to the jury.

 Under its third proposition, appellant urges that the items of damage contended for by appellees should not have been submitted to the jury for consideration because they were not supported by sufficient evidence. Article 2315, Revised Civil Code of Louisiana, provides: "Every act whatever of man that causes damage to another, obliges him by whose fault it happened to repair it". This statute has been interpreted by the Supreme Court of Louisiana to include damages for fright occasioned by the negligence of another, Stewart v. Arkansas Southern R. Co., 112 La. 764, 36 So. 676, as well as mental distress, Lewis v. Holmes, 109 La. 1030, 34 So. 66, 61 L.R.A. 274. In the case of Rebouche v. Shreveport Rys. Co., La.App., 53 So.2d 510, it was held that a woman who had been in a state of pregnancy for 3½ months when she was involved in a collision was entitled to recover damages for mental suffering and apprehension over the possible effect of the accident although she suffered no physical injury and her apprehension was unjustified. In Valence v. Louisiana Power & Light Co., supra, a judgment for a husband for mental anguish and worry over the fear that an injury sustained to his wife, who was at the time in a state of pregnancy, might have caused injury to the unborn child was affirmed. In that case it was determined that the abortion was not a result of the injury received by the wife, however, she was allowed to recover damages for mental anguish and worry over the fear that the unborn foetus might have been injured by the negligence of the defendant.

In Valence v. Louisiana Power & Light Co., supra [50 So.2d 849], the Court, by way of *dicta,* stated, "There can be no doubt at all that there could be a recovery for a result of an accident which might cause sterility, or which might otherwise prevent parents from having children. * * * It necessarily follows, we think, that when parents are actually expecting the arrival of a child, and they are deprived of the fruition of that great expectation by the actionable negligence of someone else they may recover from the tortfeasor as an item of damage for that particular loss." This is the only reasonable conclusion which may be arrived at. If damages for mental distress occasioned by fear that an unborn child or foetus may have been injured, or that an abortion may result from the negligence of another, it is inescapable that damages may be recovered for mental anguish and for pain and suffering occasioned by the actual occurrence of the event feared. In any event, the very circumstances and nature of the assault, which the jury undoubtedly must have found to have existed in this case, would authorize the recovery of damages. It is concluded that the verdict and judgment are supported by the evidence and are consistent with the applicable law.

Judgment affirmed.