No. 3453

Second Circuit

SHERWOOD v. TICHELI

(January 21, 1929.  Opinion and Decree.)
(March 12, 1929.  Rehearing Refused.)

Hudson, Potts, Bernstein and Sholars, of Monroe, attorneys for plaintiff, appellant.

McHenry, Montgomery, Lamkin and Lester, of Monroe, attorneys for defendant, appellee.

WEBB, J.  An automobile in which plaintiff, Mrs. S. B. Sherwood, her husband, and their three children were riding, was struck by an automobile owned by defendant, Mrs. Catherine Ticheli, which was at the time being driven by defendant's minor son, and the impact caused Mrs. Sherwood and one of the children, who were sitting on the back seat, to be thrown forward against the back of the front seat, and plaintiff filed this action to recover damages resulting from alleged injuries sustained by her and mental anguish suffered as the result of alleged injuries sustained by the child.

She alleged that defendant's car was being driven under her direction, and that the collision was due to the negligence of the driver of the car, and that as a result of the collision the plaintiff had sustained a simple complete fracture of the fourth transverse process of the lumbar spine, and a loosening, bruising and displacement of her right kidney, which had caused severe pain and shock, and that her health had been permanently impaired, disabling her to do her household work and to care for her children, and that her child, Mary L. Sherwood, who was sitting on the back seat with her, had sustained serious and permanent injuries, which caused plaintiff mental anguish and suffering, for which the plaintiff claimed damages as well as for the injuries sustained by her.

Defendant pleaded a general denial, and the cause being tried and submitted, judgment was rendered in favor of plaintiff for two hundred fifty dollars, from which she appeals.

It is conceded here that the evidence established negligence on the part of the defendant's car, and liability of defendant for the damages sustained, and the only question is, as to the extent of the injuries and amount of damages.

The evidence established that following the accident there were bruises on plaintiff's limbs and body, causing her to suffer some pain, and that four or five days after the accident she was confined to her bed for several days, and disassociating the alleged injury to the spine and kidney and the damages which may result therefrom, from the suffering and disability, and damages resulting from the bruises, the allowance of two hundred and fifty dollars would be sufficient, but it is, of course, conceded that if the spinal column was fractured and the kidney displaced, causing an impairment of plaintiff's health, such allowance would be inadequate.

Before considering the evidence relative to the extent of plaintiff's injury, we dispose of the claim for damages for mental anguish suffered by plaintiff as the result of injuries alleged to have been sustained by her child, as the law is well settled that plaintiff cannot recover damages on that ground (Black vs. Carrollton R. R. Co. 10 La. Ann. 33, 63 Am. Dec. 586; Brinkham vs. St. Landry Cotton Oil Co., 118 La. 835, 43 So. 458; Bourg vs. Brownell-Drews Lumber Co., 120 La. 1010, 45 So. 972, 124 Am. St. Rep. 448), and while the evidence is conflicting as to whether or not the plaintiff's spine was fractured, as well as to whether or not the kidney was displaced, we find that the preponderance of the evidence fails to establish that her spine was fractured, and eliminating the claim for damages for mental anguish suffered by plaintiff as the result of the alleged injuries to her child and for the alleged fracture of the spine, leaves for consideration the evidence relative to the alleged injury to the kidney.

The theory on which plaintiff bases her case, and in support of which evidence was introduced, is that at the time of the accident she received a trauma or blow on her back in the lumbar region of sufficient violence to have displaced the kidney, which was found to be displaced about ten days after the accident, and that plaintiff was normal and in good health prior to the accident, and that thereafter she had been in ill health, and it is argued that the only reasonable conclusion must be that plaintiff's ill health must be attributed to the accident, and the displaced kidney being sufficient to account for the impairment of her health, it follows that the displacement resulted from the accident.

There was, however, a conflict in the opinions of the experts called by the parties, as to whether or not the kidney was displaced, and the evidence was also conflicting as to the health of plaintiff before the accident, and it being shown that a displaced or movable kidney may and usually does result from other causes than trauma or an external blow, being often found in women who have borne children or persons who have undergone abdominal operations, and that where the displacement results from violence or trauma the subject is usually immediately temporarily disabled, and there will be some indication in the urine of a bruise of the kidney, and that the condition of hydronephosis, which often results from a movable kidney, usually rapidly develops to an acute stage, when the kidney is displaced by trauma, and the evidence further establishing that a displacement or sagging of the kidney would follow from the condition

of hydronephosis, or an abnormal accumulation of urine in the pelvis of the kidney, which would follow from a stricture in the ureter near the opening into the bladder, which stricture would not be caused by a blow on the back, evidence was offered showing that plaintiff had borne children and had undergone abdominal operations, and establishing that plaintiff had not been immediately temporarily disabled, and that there was not any indication in the urine of a bruise of the kidney, following the accident, and that the condition of hydronephosis had not rapidly developed to an acute stage, and also evidence was offered tending to establish that there was a stricture in the ureter near the opening into the bladder, which had caused the condition of hydronephosis, which would account for any displacement or sagging of the kidney.

Conceding that the evidence introduced on behalf of the plaintiff made a prima facie showing, from which it should be logically inferred that the displacement of the kidney resulted from the accident, we do not think the mere fact that the displacement may have resulted from plaintiff having borne children or from abdominal operations, could affect the conclusion, especially in view of the fact that at the time of the operation, from which plaintiff had an uneventful recovery, which was about six months after the birth of her last child, there was not any indication of an abnormality of the kidney, and while it is apparently conceded that a stricture in the ureter at a point near the opening into the bladder, could have caused the condition of hydronephosis, and the displacement of the kidney, which, considered with the circumstance that there was not present any of the usual conditions attending or following a displacement of the kidney by trauma or violence, would

overcome the prima facie showing; however, the evidence establishes there was not such a stricture at the time of the trial, in March, 1928, and although there was evidence tending to show that there may have been a stricture in the ureter following the accident, and at the time plaintiff was examined, in October, 1927, the evidence showing that such a stricture would be permanent, the fact that it did not exist at the time of the trial shows that it did not exist at the time of the accident.

As stated, there is conflict in the opinions of the experts as to whether or not the kidney was displaced, and as to the plaintiff's condition prior to the accident; we find, however, that the preponderance of the evidence established that the kidney was displaced, and there was an abnormal accumulation of urine in the pelvis of the kidney at the time the examination was made about ten days after the accident, which occurred in October, 1927, and that the condition found at the time had not progressed to any material extent at the date of the trial, in March, 1928, and while there was evidence conflicting with the testimony of the plaintiff that she had not suffered with pain in her back prior to the accident, plaintiff's testimony was supported by that of the surgeon who had operated upon her about eighteen months prior to the accident and had attended her subsequent to that time, and there is not any evidence whatever in conflict with her testimony that she had been in good health prior to the accident, and that she had been in ill health subsequent thereto, which shows that she had been disabled to some extent in doing her household work, and although it is impossible to determine the violence of the trauma or blow sustained by plaintiff, the evidence shows that the car in which she was rid-

ing, which was being driven at a speed of twelve or fifteen miles per hour, was struck on the side by the front of defendant's car, which was being driven at a speed of twenty-five miles per hour, and that the force of the impact was sufficient to knock the car in which plaintiff was riding a distance of eight or ten feet, where it landed partially over the curb, and plaintiff being thrown forward from the back seat, where she fell in a kneeling position, it is not unreasonable to assume that her back, at the point indicated by the bruised and swollen place found thereon the morning after the accident, came in contact with some part of the car with great violence, and it being conceded that a trauma or blow on the back in the region indicated by the bruised and swollen place on plaintiff's back could cause a displacement of the kidney, which, as stated, was found soon after the accident, raises a strong presumption that the displaced kidney was the result of the accident, and the fact that there was not present the usual conditions attending or following such displacement does not necessarily affect the presumption.

The physicians called by plaintiff were of the opinion that the displacement of the kidney resulted from the accident, and while those called by defendant expressed a contrary opinion, an analysis of their opinion will show, we think, that it was based upon their opinion that there was a stricture in the ureter and not upon any conclusion that plaintiff had not sustained a trauma of sufficient force to have displaced the kidney or the absence of the usual conditions attending or following such an injury; but if not, and there is an irreconcilable conflict in the opinions of the physicians called by the parties, the opinion of those called by the plaintiff is entitled to greater weight as it is supported by evidence showing a definite cause for the injury (Wooters vs. Thompson, 10 Mar. (O. S.) 674; Joiner vs. Texas & Pacific Ry. Co., 128 La. 1050, 55 So. 670); and we conclude that the plaintiff has established by a preponderance of the evidence that the condition of her kidney found soon after the accident resulted therefrom, and that she is entitled to recover damages for such injury.

Plaintiff, in her petition, fixed the amount of her damages at a large sum, but the evidence does not show that she has suffered constant severe pain or that she has been disabled from attending to her household duties to any great extent, and while it shows that the injury to the kidney will be permanent, and that she may have to undergo an operation, there is not any indication of the suffering or disability having increased at the time of the trial, or that the physicians at that time deemed it necessary for her to undergo an operation, and we are of the opinion that an allowance of five thousand dollars will be sufficient to cover the damages for the impairment of her health and partial disability resulting therefrom.

It is therefore ordered that the judgment appealed from be amended and the amount awarded plaintiff be increased to five thousand dollars, and that as amended the judgment be affirmed.