135 So.2d 145 (1961)
Claude Ray HOLLAND, Individually and for the Use and Benefit of Montgomery Ray Holland and Mrs. Claude Ray Holland, Individually
v.
ST. PAUL MERCURY INSURANCE CO. and Leo Burks D/B/A Southern Terminix Company.
No. 5408.
Court of Appeal of Louisiana, First Circuit.
November 13, 1961.
*147 Cobb & Brewer, Baton Rouge, for appellants.
Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, for appellees.
Before LOTTINGER, LANDRY and REID, JJ.
LANDRY, Judge.
This action instituted by Claude Ray Holland, individually, and for the use and benefit of his minor son, Montgomery Ray Holland, and by Mrs. Claude Ray Holland (mother of said minor), individually, seeks recovery of damages for personal injuries allegedly sustained by each of said plaintiffs as the result of the aforesaid minor's eating rat poison placed in the home of petitioners by defendant, Leo Burks, an Exterminator, operating under the trade name of Southern Terminix Company (hereinafter referred to and designated as "Terminix") the insured of defendant, St. Paul Mercury Insurance Company.
To the claim of petitioner, Mr. and Mrs. Holland, individually, defendants filed exceptions of no right and no cause of action which were sustained by the lower court and said plaintiffs' actions dismissed.
Trial of the claim of the minor, Montgomery Ray Holland, was had before a jury which rendered judgment in favor of defendants rejecting said minor's claim. Plaintiffs Mr. and Mrs. Holland prosecute this appeal from the judgment of the trial court dismissing their respective individual claims upon defendants' exceptions of no right and no cause of action.
In this court defendants reurge their exceptions of no right and no cause of action with respect to the claims of appellants, Mr. and Mrs. Holland, and have additionally filed Exceptions of Res Judicata and Pleas in Bar of Judicial Estoppel in opposition to the claim of each said appellant.
To afford a better understanding of the legal principles advocated in support of the respective positions of the adverse parties to this litigation, we deem it both necessary and advisable to set forth in full the pertinent allegations of appellants' petition as supplemented and amended.
Articles 1 through 18, inclusive, of the original complaint read:

1.
That St. Paul Mercury Insurance Company is a foreign insurance corporation, organized and existing under the laws of Minnesota, with its domicile at St. Paul therein, authorized to do and doing business in the State of Louisiana, having filed the proper credentials with the Secretary of State and having appointed the Secretary of State as its agent for service of process in Louisiana.

2.
That Leo Burks is a resident of the full age of majority of the Parish of East Baton Rouge, State of Louisiana, and is doing business as Southern Terminix Company in Baton Rouge, Louisiana.

3.
That Montgomery Ray Holland was born on November 3, 1957, and is the lawful issue of petitioners.

4.
That on or about March 11, 1959, in the Parish of East Feliciana, State of *148 Louisiana, said minor child ate an undertermined (sic) amount of an unknown kind of "rat poison" placed in petitioners' home by the defendant Southern Terminix Company.

5.
That as a result of eating the said "rat poison" manufactured, sold and distributed and placed by the said Southern Terminix Company, petitioners' minor child, Montgomery Ray Holland, became violently ill and had to be rushed to a hospital.

6.
That the throat, tongue, larnyx, stomach, vocal chords, esophagus, and other organs of the minor child, Montgomery Ray Holland, were damaged by the ingestion of the said rat poison.

7.
That the said rat poison was manufactured by the said Southern Terminix Company and placed in petitioners' home by the said Southern Terminix Company and that petitioners' home was under contract for service and was being serviced by said Southern Terminix Company for rats and roaches; that said Southern Terminix Company was negligent inter alia, by placing a rat poison in petitioners' home, knowing of children in said home, in such a place where children could easily obtain it, by not picking up old poisons and disposing of them when they were no longer useful as a rat killer and by just pushing the poison into the wall which caused it to come out into the closet of another room; that Southern Terminix Company was further negligent by the fact that they knew that said minor child, Montgomery Ray Holland, was in said house and by not taking proper precaution to see that said child could not come in contact with said rat poison.

8.
That petitioners' house in Clinton, Louisiana was under contract for treatment for rats and roaches for six months, to be treated on the first of each month and said accident occurred on the fifth such treatment.

9.
That as soon as Mrs. Holland discovered that her child, Montgomery Ray Holland, had eaten said rat poison she rushed him to the Clinic at Clinton, Louisiana, at which time a frantic effort was made to discover what particular type of poisons were contained in the said rat poison and the said Southern Terminix Company was contacted to inform the Doctor of the type of poison.

10.
That the said Southern Terminix Company knew which particular type of rat poison petitioners' (sic) had asked the consistency of, but did not know what poisons were in said "rat poison."

11.
That two men from the Southern Terminix Company went to petitioners' home and picked up the rat poison that was left and examined it and were still unable to tell just what poisons it contained, although they thought it may contain thellium sulphate, which is a deadly poison.

12.
That the agent and/or employees of Southern Terminix Company who picked up the rat poison that was left in petitioners' home were unable to discover the type of poison in said "rat poison" even though they took it to the person who makes said poison for defendant Southern Terminix Company.

*149 13.
That for about three hours, petitioners were afraid that their son was going to die without the aid of medical care because there was no way of knowing just what poison the child had ingested and before treatment could be instituted it was necessary to know what poisons were contained in said rat poison in order to know what treatment to institute and that because the only poison that the agents and/or employees of Southern Terminix Company knew that may be in said rat poison was that of thellium sulphate, petitioners' minor child then underwent treatment for thellium sulphate poisoning.

14.
That petitioners' minor child had to undergo painful shots every three hours for thellium sulphate poisoning, and stayed in said hospital three days with a residual loss of weight and sores in his mouth.

15.
That the said Southern Terminix Company makes its own poisons and manufactured the said "rat poison" but did not know what type of poison it contained and did not keep records of the type of poison it contained.

16.
That as a direct result of the eating of the said rat poison by petitioners' son, petitioner Mrs. Claude Ray Holland, suffered shock and injury to her nervous system and nerves, causing her to become shaken, weak, nervous, causing her to suffer extreme mental anguish and pain for all of which petitioner is entitled to the sum of $15,000.

17.
That petitioner, Claude Ray Holland, individually, desires and is entitled to recover from defendants, as a result of the injuries sustained and the worries and mental anguish inflicted, the following damages:

Physical and mental pain and
 anguish $15,000.
Medical and incidental expenses $154
Future medical expenses $1,000.
or a total of $16,154.

18.
That petitioner, Claude Ray Holland, for the use and benefit of his minor child, Montgomery Ray Holland, desires and is entitled to recover from defendants as a result of the injuries sustained the following damages:

Physical pain and suffering,
 past and future $7,500
Physical and mental injuries and
 impairment of bodily functions $7,500
or a total of $15,000.

We find Articles 16 and 17 of the initial petition revised by supplemental and amending petition to read as follows:

16.
That as a direct result of defendants (sic) indifferent, reckless, wanton and disinterested attitude and gross negligence, in failing to specify the poisonous ingredients in the rat poison eaten by petitioners' son, in order that petitioners' doctors could do something to inhibit the lethal action of the poison, petitioner, Mrs. Claude Ray Holland suffered shock and injury to her nervous system and nerves, causing her to become shaken, weak, nervous, causing her to suffer extreme mental anguish and pain for all of which petitioner is entitled to the sum of $15,000.

17.
That petitioner, Claude Ray Holland, individually, desires and is entitled to recover from defendants as a result of *150 the injuries sustained and the worries and mental anguish inflicted by defendants' indifferent, reckless, wanton and disinterested attitude and gross negligence, in failing to specify what the poisonous ingredients in the rat poison eaten by petitioners' son, in order that petitioners' doctor could do something to inhibit the lethal action of the poison, the following damages:

Physical and mental pain and
 anguish ................... $15,000.
Medical and incidental
 expenses ................... $154.
Future medical expenses ..... $1,000.
or a total of $16,154.

Defendants maintain the totality of allegations presented by plaintiffs assert merely a derivative or secondary claim for damages for mental pain and anguish sustained by the parents of a child purportedly injured by the asseverated negligence of defendant Terminix. It is the contention of learned counsel for defendants that, according to the well established jurisprudence of this state, one person cannot recover damages for shock, mental pain and suffering as a result of injury to the person of another.
We have read all of the cases cited by esteemed counsel for defendants and proceed to a consideration of each individually commencing with Black v. The Carrollton Railroad Company, (1855), 10 La.Ann. 33, in which the Supreme Court of this state held a parent was not entitled to damages for shock resulting from personal injury to a child who at the age of 14 years sustained a fracture of both legs.
The suit of a father of two children to recover damages for mental anguish caused by the unlawful arrest of said children in the presence of their mother was dismissed in Sperier v. Ott (1906) 116 La. 1087, 41 So. 323, 7 L.R.A.N.S., 518, on the theory that the mother herself could not recover for such shock.
In Brinkman v. St. Landry Cotton Oil Co. (1907), 118 La. 835, 43 So. 458, a father was denied recovery for mental pain and suffering which he himself endured because of injury to his son.
The rule thus established was followed by Barrera v. Schuber (1926) 5 La.App. 67, wherein a mother's claim for damages for mental suffering arising from injury to her child who was knocked down and injured by defendant's automobile was rejected as not being a claim recognized under the law of this state.
Similarly the claim of a husband for mental pain and anguish over the plight of his wife and child injured in an accident in which all three were pinned beneath an overturned automobile was denied as being without foundation under our law. See Alston v. Cooley (1927) 5 La.App. 623.
The same result was attained in Sherwood v. Ticheli (1929) 10 La.App. 280, 120 So. 107, which presented a claim by a mother for mental anguish over the injury of her child sustained in a collision in which plaintiff herself also received injury.
The foregoing jurisprudence was again followed in Seligman v. Holladay (1934) La.App., 154 So. 481, which was an action by parents to recover for mental anguish occasioned by the negligent injuring of their child by defendant while in the act of driving an automobile.
A husband's claim for mental anguish arising from injuries to his wife as a result of the negligence of defendant's driver was ordered expunged from plaintiff's petition on the ground a claim of this nature is unknown in civil law. See Grier v. Tri-State Transit Co. (1940) D. C. of La., 36 F.Supp. 26.
In Davies v. Consolidated Underwriters (1943) La.App., 14 So.2d 494, it was held that parents of a child who died during pendency of a suit to recover damages for the negligent injuring of the child were *151 entitled to recover for the pain and suffering endured by said child but not for their own mental anguish resulting from the child's injury.
Citing the Davies case, supra, Hughes v. Gill (1949) La.App., 41 So.2d 536, held a mother and father were not entitled to damages for worry caused by injuries sustained by their minor child in an accident. Next in this same line of jurisprudence, counsel cites Covey v. Marquette Casualty Co. (1956) La.App., 84 So.2d 217, holding that a husband may not recover for mental suffering arising from injury to his wife.
The most recent decision relied upon by learned counsel for defendant is that of Honeycutt v. American General Insurance Co. (1961) La.App., 126 So.2d 789, in which this court cited with approval the Hughes, Davies and Seligman cases holding a parent may not recover for his own mental pain and anguish over injury to his minor child.
As pointed out by esteemed counsel for defendant the rationale of the foregoing well recognized rule is set forth in Vol. 18, A.L.R.2d Anno. Damages, Sec. 7, Pages 239-240, as follows:
"§ 7. Editorial comment.
"The absence of any definite principle of liability in the English cases is shown by the absence of any common ground in the views of the judges. After nearly twenty years of the following of the apparent holding in Hambrook v. Stokes Bros. (Eng.) (1925) 1 K.B. 141C.A. supra, § 3, by the trial courts of England, and perhaps by those in other British countries, the lord justices were driven in Hay v. Young (1943) A.C. 92 (1942) 2 All Eng. 396, supra, § 3, to explain it on grounds which completely deprived it of the authority for which it must have been followed. They resorted to the argument that the defendant had admitted a breach of duty directly to the plaintiff by its general admission of negligence made in its answer. Undoubtedly it was followed, however, as supporting the right of bystanders and others in the presence of an accident to recover for nervous shock occasioned by it, whether or not the fear of injury to another entered into the matter. In Owens v. Liverpool Corp. (1939) 1 K.B. 394, (1938) 4 All Eng. 727C.A., persons riding in a funeral cortege were allowed to recover for the shock to their sensibilities caused by the defendant's driving its motor vehicle into the side of the hearse, and thus threatening desecration of the corpse. This decision, too, was doubted in Hay v. Young by such of the judges as referred to it. In another English case recounted in the New York Times for April 13, 1939, p. 24, a woman bystander who witnessed a minor clash between motor vehicles, and promptly fainted, recovered a verdict of $12,500.
"Doubtless, the unanimous view of the American courts against permitting recovery in cases of this kind is influenced by considerations of practical justice. For a motorist who clashes with another vehicle in a crowded city square to be faced with claims by a score of near-by women for shockexaggerated by stories of headache, nausea, loss of appetite, loss of weight, sleeplessness, night terrors, indigestion, and fear of going out on the streetwould be inconceivable. The more important claims would be those of persons with weak hearts or high blood pressure, or of pregnant women. To have such claims strengthened by testimony of fright at possible injury to others would but add to the difficulty. The evidence of damages in all such cases is usually subjective evidence of the most unreliable sort. The medical testimony is only as to what the plaintiff had if she had what she says she had, all evidence which the defendant has no possible *152 way to meet. Doctors testify pro and con, giving opinions on bare hypotheses of cause and effect. In a case like that in Hambrook v. Stokes Bros. (Eng.) (1925) 1 K.B. 141C.A. supra, § 3, who could possibly say with certainty that the plaintiff's later partial miscarriage was caused by fright at the time of the accident or by some other circumstance? The doctors would disagree on their medicine as widely as the judges would disagree on their law. The plaintiff's doctor would give his opinion that the partial miscarriage resulted from nervous shock; the defendant's doctor would testify that it could not have resulted from shock but required physical injury or torsion; just as in a blood-pressure case the plaintiff's doctor will testify that the hypertension came from the shock and the defendant's doctor will say that essential hypertension cannot be thus increased.
"As to the task committed to the jury in such cases, the answers required of them by Hambrook v. Stokes Bros. would imply the powers of a Delphic oracle. Was the mental disturbance of the now deceased mother due to fear for her own safety or to fear for the children's? Was it caused by what she saw or by what was told her? Was it incurred at the scene, or when she found that her daughter was not at the school, or when she discovered her in an injured condition at the hospital? Was the later partial miscarriage the result of anxiety experienced at the scene or the result of her hurried trips to school and hospital, or of her journeys to the races or her experiences there, or to any of the various incidents of life that cause an abortion and, through subsequent neglect, death by infection? Baffled by issues of this sort, by the mysterious terms used by the doctors, and by the unaccustomed words used by the judge in his instructions, a jury will deliver a verdict according to their liking.
"If, in a whole field of litigation, the courts cannot give justice to the defendant as well as to the plaintiff, they should not enter that field. This is the ground upon which most of the American courts have refused to entertain negligence cases based on nervous effects alone.
"As to the solving of the question on legal principle, the better-considered opinions declare that it is not a question of proximate cause but one of legal duty. Before a defendant can be held liable to a plaintiff for the probable consequences of an act, it must appear that the act was a breach of duty to the plaintiff, not merely to someone else. In the opinion by Lampron, J., in Cote v. Litawa (1950) [96] N.H. [174], 71 A.2d 792, 18 A.L.R.2d 216, where the plaintiff's shock was caused by seeing her child brought into the house apparently injured, the emphasis was placed on the absence of any relation between the defendant and the plaintiff which was violated by the defendant in his lack of due care toward the child. But even the test of relationship does not explain the rule in its usual application; as, for example, in the case of one who seeks to recover for shock at merely seeing an accident. If a motorist negligently collides with another car on the street and something flies and strikes a person some distance away, he is liable to the latter; yet if the connection between the collision and this person is only through the reflection of light to his eyeswhich we call sight causing disturbance to his nervous system, the motorist is not liable. The relation between the parties is the same. The true explanation seems to be that the many centuries of development of the common law concerning negligence have established a liability *153 for consequences wrought through physical forces but not for those which consist only in the unpredictable responses of various neural systems to sight and sound. Confirming, perhaps modifying, this evolutionary explanation is that found in the Massachusetts decisions, which declare that the rule requiring a palpable physical injury as part of the accident, is a necessary rule of evidence. At all events the result of trying to enlarge the field of liability to include nervous reactions alone is exemplified in the profusion of ideas advanced in the English opinions." (Italics ours).
The basis of defendants' plea of res judicata is that since the trial jury has rejected the claim of petitioners' minor child by the adverse verdict rendered below, it has, in fact, held that there was no negligence on the part of Terminix from which it necessarily follows no tort was committed.
In this regard, defendants further maintain that the actions asserted by plaintiffs are secondary and derivative in that they are dependent upon the commission of a tort against the child and cannot exist in the absence of a tort committed on the person of the child. Extended further the argument in this respect is to the effect that the derivative or secondary right of plaintiffs herein can exist only if defendant negligently injured plaintiffs' child and since the adverse judgment below establishes the contrary, the question of defendants' lack of negligence is res judicata as to plaintiff parents.
Defendants' pleas in bar of judicial estoppel are predicated on Williams v. Marionneaux, 240 La. 713, 124 So.2d 919, which holds that a plaintiff's cause of action abates against a person secondarily liable when it is shown that plaintiff has already litigated with the primary obligor. The court pointed out, however, that in such instances the parties-defendant not being the same, a plea in bar of judicial estoppel (rather than a plea of res judicata) is procedurally appropriate.
To the same effect, learned counsel for defendant also cites Quarles v. Lewis, 226 La. 76, 75 So.2d 14.
On the contrary, however, directing the attention of the court to the firmly established rule that for purposes of defendants' exceptions of no cause of action, all well pleaded allegations of their petition as supplemented must be accepted as true, plaintiffs contend their cause of action is predicated not upon the injury or the apprehension thereof to their minor child and is neither secondary nor derivative, but rather it is direct and primary right predicated upon a breach of duty owed directly to plaintiffs by Terminix. Plaintiffs contend their petition asserts a two-fold, direct, non-contingent duty owed them individually by Terminix consisting of first, a contractual obligation on the part of Terminix arising from said defendant's continuing agreement to treat and maintain plaintiffs' home free of rodents as well as the general legal obligation owed plaintiffs as householders by Terminix in the latter's capacity as a handler of highly dangerous substances, namely, poisons of various types.
Further extension of plaintiffs' position is to the effect the law of this state does indeed and has on numerous occasions permitted recovery of damages for mental pain and anguish arising from a breach of duty owed a plaintiff even though such mental pain and anguish be unaccompanied by physical injury to the plaintiff seeking redress.
Thus in Lafitte v. New Orleans City and L. R. Co. (1890) 43 La.Ann. 34, 8 So. 701, 12 L.R.A. 337, damages were awarded for humiliation suffered by a passenger on a public conveyance arising from his being falsely accused and arrested for allegedly passing a counterfeit dollar. Although his claim for malicious prosecution and arrest was rejected because defendant's employee *154 ordered the arrest outside the scope of his employment, plaintiff's claim for humiliation and embarrassment was sustained because of the employee's breach of defendant's obligation to treat passengers with respect and protect them from insults and violence.
Plaintiffs next cite Lewis v. Holmes (1903) 109 La. 1030, 34 So. 66, 61 L.R.A. 274, in which case damages were allowed for humiliation and disappointment occasioned by defendant's failure to timely and properly deliver plaintiff's wedding trousseau. The basis of recovery was stated to be breach of contract.
Graham v. Western Union Telegraph Company (1903) 109 La. 1069, 34 So. 91, also relied upon by plaintiff, granted an award for mental pain and anguish resulting from defendant's failure to deliver a message announcing the fatal illness and imminent death of plaintiff's son thereby depriving plaintiff of the opportunity of attending her son prior to and at the time of his death. Predicated upon implied or quasi contract the Supreme Court of this State sustained an award in favor of the mother who was the addressee and not the sender of the undelivered message.
Haile v. New Orleans Ry. & Light Co. (1914) 135 La. 229, 65 So. 225, 51 L.R.A., N.S., 1171, is also relied upon by plaintiffs as authority for the proposition that one may recover for mental pain and anguish unaccompanied by physical injury. In this case, plaintiff, a passenger on a public conveyance, was awarded damages for humiliation and degradation resulting from the action of defendant's employee in suggesting that a person as obese as plaintiff should have taken a seat at the rear of the car.
Reliance by plaintiffs is also placed on Quina v. Roberts (1944) La.App., 16 So. 2d 558, in which damages were allotted because of humiliation attendant upon defendant's writing plaintiff's employer a letter informing the employer of an indebtedness owed defendant by plaintiff and soliciting the employer's assistance and cooperation in its collection. The court therein held that Article 2315 LSA-C.C. (the general tort law of this state) contemplates redress to all who suffer injury as a consequence of an offense of quasi offense including recovery for mental pain and anguish unaccompanied by injury to one's person.
Finally, plaintiffs cite Valence v. Louisiana Power and Light Co. (1951), La.App., 50 So.2d 847, which in our judgment stands alone contrary to the weight of the firmly established jurisprudence of this state inasmuch as plaintiff therein was permitted recovery of damages for mental pain and anguish prompted by fear that injury sustained by his wife would cause injury to her unborn child and apprehension of his wife suffering a miscarriage as a result of such injuries.
We submit that the foregoing cases relied upon by plaintiffs herein are ample authority to the effect the courts of this state permit recovery of damages for breach of an obligation resulting in mental pain and anguish even though no personal injury may result.
In asserting the liability of defendants herein, plaintiffs point to the universally recognized rule of law (followed in this state) which holds to a high degree of care persons dealing in, handling or distributing highly dangerous substances and instrumentalities such as explosives, electricity, firearms, combustibles and fireworks. Plaintiffs argue that considering the nature of defendant's business is the sale and distribution of poisons (particularly the rat poison alleged to have been placed in plaintiffs' home) defendant Terminix owed a high degree of care to plaintiffs which includes not only the exercise of reasonable caution and care in the placing of such substances in and about plaintiffs' premises but also knowledge as to the components of the poisons employed on plaintiffs' premises and the capability of informing plaintiffs with reasonable dispatch of the precise nature of the poison or poisons used in the *155 event plaintiffs requested or had need of such information. Stated otherwise, it is the position of plaintiffs that failure of defendant to possess and with reasonable diligence impart to plaintiffs exact knowledge as to the ingredients of the poison used, constituted breach of an entirely separate and distinct obligation owed plaintiffs independent of, unrelated to, non-contingent upon and unconnected with the alleged prior tort purportedly committed with respect to the child. In essence plaintiffs' argument is that irrespective of and notwithstanding the occurrence of a tort with respect to their child the breach of the obligation owed to them individually gave rise to the cause of action asserted herein. Additionally, plaintiffs maintain that assuming arguendo Terminix to be free of negligence quoad the child and even further that their son did not in fact eat the poison, they nevertheless have a cause of action to recover for the anxiety occasioned by defendant's failure to know the content of the poison and communicate same to plaintiffs when requested to do so. Plaintiffs' right to such information in the event of need therefor is said to be primary and direct, not secondary or derivative. Finally, it is the position of plaintiffs that since defendant has been quilty of breach of a duty owed directly to plaintiffs themselves defendant is responsible for all foreseeable consequences thereof including mental pain and anguish because of injury or apprehension of injury to their minor child.
As shown in the hereinabove quoted language appearing in 18 A.L.R. (2d) Anno. Damages Par. 7, pages 239-240, the reason for the general rule denying damages to one person for shock or mental pain caused by injury to another is basically threefold. First, it is founded on the premise of practicality of justice in that it serves to protect the tort feasor from the unreasonable demands of myriads of persons who, though witnesses to the tort, are not directly affected thereby and sustain no personal or property damage as a result thereof but who are persons of such physical and mental constitution their sensibilities are shocked by the suffering or distress of others. An adjunct of the "practical justice premise" is said to consist of the extreme difficulty encountered by the courts in assessing damages for such injuries. Still another aspect of the practical justice theory appears to be that to permit recovery in such instances is to open a field of litigation which will flood the courts with lawsuits in which practical justice cannot be meted out to plaintiff and defendant alike consequently, the courts should avoid entering the sphere. Secondly, insofar as concerns solution of the problem on legal theory, the aforesaid article concedes the better reasoned opinions predicate the rule not on the issue of proximate cause but rather lack of a legal duty toward the party claiming damages under such circumstances. In this regard the article refers to the universally accepted rule (admittedly prevailing in this state and to which we heartily subscribe) that before a defendant may be held liable to a plaintiff for the reasonable and probable consequences of his acts it must appear the act was a breach of duty owed to plaintiff himself and not merely a duty owed solely to a third party. Thirdly, it is stated the true explanation of the rule seems to be that the evolutionary process of common law has established the principle of liability for consequences wrought by physical force but not for results consisting only in the unpredictable responses and reactions of an individual to sight and sound.
The answer to the contention that to allow recovery to plaintiffs herein is to defeat the ends of "practical justice" with the alleged attendant problems mentioned and the entry into a field wherein justice cannot be dispensed toward the litigants on equal and impartial terms is, in our opinion, found in the following appearing in Prosser on Torts, page 39: (1941 Ed. § 11, P. 55)
"Again, it has been said that mental consequences are so evanescent, intangible and peculiar, and vary to such *156 an extent with the individual concerned, that they cannot be anticipated, and so lie outside the boundaries of any reasonable `proximate' connection with the act of the defendant. It is not difficult to discover in the earlier opinions a distinctly masculine astonishment that any woman should ever be so silly as to allow herself to be frightened or shocked into a miscarriage. But medical science has recognized long since that not only fright and shock, but also grief, anxiety, rage and shame, are in themselves `physical' injuries, in the sense that they produce well marked changes in the body, and symptoms that are readily visible to the professional eye. Such consequences are the normal, rather than the unusual, result of a threat of physical harm, and of many other types of conduct; and in any case, nearly all courts have discarded foreseeability as the sole criterion of legal cause."
"The most valid objection to the protection of such interests lies in the `wide door' which might be opened, not only to fictitious claims, but to litigation in the field of trivialities and mere bad manners. It would be absurd for the law to seek to secure universal peace of mind, and many interferences with it must of necessity be left to other agencies of social control. `Against a large part of the frictions and irritations and clashing of temperaments incident to participation in a community life, a certain toughening of the mental hide is a better protection than the law could ever be.' But this is a poor reason for denying recovery for any genuine, serious mental injury. It is the business of the law to remedy wrongs that deserve it, even at the expense of a `flood of litigation,' and it is a pitiful confession of incompetence on the part of any court of justice to deny relief on such grounds. `And it is no objection to say, that it will occasion multiplicity of actions; for if men will multiply injuries, actions must be multiplied; for every man that is injured ought to have his recompense.' So far as distinguishing true claims from false ones is concerned, what is required is rather a careful scrutiny of the evidence supporting the claim; and the elimination of trivialities calls for nothing more than the same common sense which has distinguished serious from trifling injuries in other fields of the law."
It is hardly open to serious question that the business of Terminix whose principal activity is that of killing and keeping premises free of rodents, pests, insects and vermin by the use and employment of poisons of various kinds, characterizes such endeavor as one of a highly dangerous classification inasmuch as by the very nature thereof substances harmful to human life and welfare are, within the course of normal operation of such business, placed within reach of and made accessible to persons residing in and frequenting premises undertaken to be protected. It follows that because of the obvious danger to human as well as animal life resulting from the negligent, careless or indifferent exercise of the functions undertaken to be performed, there rests upon those engaging in such endeavors a high degree of care in the placement of such substances on or about the premises of persons engaging their services. The foregoing duty is especially true with respect to children whom exterminators know or have reason to know may live upon the premises.
As contended by learned counsel for plaintiffs, we are of the further opinion that by the nature of defendant's business, defendant is charged with the direct legal obligation of knowing the components of poisons employed on the premises of its customers and possessing capability of informing its said customers as to their precise nature within a reasonable delay following request for such information.
*157 The entire foundation of the claims presented herein is the alleged negligence and carelessness of defendant in failing to know the ingredients of the poison placed in petitioners' home and additionally defendant's failure to either furnish or be able to provide such information when requested by plaintiffs. It is defendant's failure to discharge this duty owed plaintiffs which forms the cornerstone of plaintiffs' demands since this allegedly negligent and careless action on the part of defendant Terminix is said to be the reason treatment of the child was delayed thereby causing plaintiffs' mental pain and anguish. The duty thus encumbent upon Terminix was, in our opinion, due both under our general tort law as well as under the implied provisions of the contract whereunder Terminix assumed the obligation of ridding plaintiff's premises of rodents.
We conclude, therefore, the necessary element of a legal duty owed plaintiffs (an indispensable prerequisite to their claims herein) exists in the case at bar.
On the question of proximate cause, we believe it entirely within the realm of reasonable foreseeability that failure of Terminix to know the ingredients of the poison placed in plaintiffs' home and inform plaintiffs thereof with reasonable dispatch upon request would result in anxiety, worry and concern on the part of plaintiffs herein. Although the record as presently constituted does not indicate defendant's experience in the field of extermination, by the very act of engaging in such endeavor, defendant is charged with knowledge that the nature of its business is such that requests or calls for information regarding the components of poison used are reasonably and logically to be expected from time to time under circumstances similar to those set forth in the petition filed herein.
Ordinary experience teaches that incidents similar to those involved in the case at bar are not altogether rare or uncommon and occur with some degree of frequency. Everyday experience further teaches that not only children but also pets and animals (and infrequently adults) are affected by the inadvertent consumption of poison placed in or about premises for the eradication of rodents, roaches and other household pests. That each such poison has its own particular antidote, and that a person suspected of having ingested poison may not be treated until the precise poison is known, is a matter of common everyday knowledge. Assuming, however, such knowledge were not commonplace, defendant Terminix, whose business is that of handling and distributing poisons, holds itself out as an expert in the field and in legal contemplation is, on that basis alone, charged with such knowledge. Being possessed of such knowledge, operators of such businesses are also charged with knowledge that in the event of emergencies of the type involved in this litigation, time is of the essence and their failure to promptly furnish the required information may reasonably be expected to result in concern, worry and mental stress on the part of the particular customer involved.
As evidenced by the decisions hereinabove cited, namely, Lafitte v. New Orleans City and L. R. Co., Lewis v. Holmes, Graham v. Western Union Telegraph Company and Haile v. New Orleans Ry. & Light Co., supra, our courts have rejected the principle which denies recovery for mental pain and suffering unaccompanied by physical injury to plaintiff and have repeatedly and consistently permitted recovery in such cases provided it be found the worry and anguish for which damages are sought was occasioned by breach of a duty owed plaintiff by defendant and is not predicated solely upon breach of duty owed a party other than plaintiff. Since the existence of the rule must be conceded on the basis of the foregoing authority, we believe the mental anguish occasioned plaintiffs by defendant's failure to know and promptly advise plaintiffs as to the nature of the poison used in this case is no more nebulous, no less real and is no more perplexing *158 to the courts from the standpoint of assessing the value to be placed thereon than the mental distress of the bride whose trousseau did not timely arrive, (Lewis v. Holmes, supra) or the distraughtness of the individual falsely accused of and arrested for an offense he did not commit, (Laffitte v. New Orleans City and L.R. Co.) or the grief of the mother who failed to receive the telegram advising of the mortal illness and imminent death of her son (Graham v. Western Union Telegraph Company), or, finally, the humiliation of the party ridiculed because of obesity (Haile v. New Orleans Ry. & Light Co.).
Since the instant case establishes defendant's duty to know the components of its products, as a matter of first impression, (the issue being res nova quoad the jurisprudence of this state) in order to eliminate (or at least minimize) confusion, doubt and uncertainty as to the applicability of the rule herein announced, we deem it advisable and prudent to define the class of individuals to whom the obligation is due. With respect to plaintiff husband it arises ex contractu as well as ex delicto, the former by virtue of his being by law the head and master of the community existing between him and plaintiff wife and in such capacity the party with whom defendant Terminix contracted to render its services. It is ex delicto as to both plaintiffs, husband and wife, inasmuch as they occupy the position of joint householders possessing mutual concurrent and coexistent rights, duties, privileges and responsibilities for the conduct, operation and maintenance of the home in which defendant Terminix placed highly dangerous substances. The rule is not to be understood or interpreted as extending in favor of third persons in general, such as, by way of illustrative extension rather than limitation, guests who may be present or visiting in a home, house, residence, apartment or any building, structure or mobile device similarly used, occupied or inhabited during the occurrence of an incident of the nature sued upon by plaintiffs herein. To such third persons, defendant's duty to know neither extends nor exists, their presence and status being merely the legal equivalent of that of the uninjured, coincidental spectator to an automobile accident which, although causing injury to a third person, involves no breach of duty or care to the spectaror by the person responsible for the third party's injury. In so holding we entertain not the slightest apprehension the view herein expressed will open the gates to a flood of litigation or project the court into a field of law in which substantial, impartial and equal justice may be denied any litigant be he plaintiff or defendant.
The conclusion herein reached is founded on the simple legal premise that plaintiffs' causes of action are founded on the legal and contractual duty owed directly and primarily to plaintiffs themselves with the correlative right existent in plaintiffs to recover damages proximately caused by defendant's breach thereof. Defendant's duty in this regard, as well as plaintiffs' correlative rights, are neither secondary, derivative nor dependent upon injury to a third party but on the contrary, are direct, primary and independent of an alleged tort in relation to plaintiffs' son. In the case before us the alleged tortious injury to plaintiffs' child is of no moment it being absolutely without consequence in the case at bar whether said child did or did not, in fact, partake of rat poison. The tort committed by defendant insofar as the claims of present plaintiffs are concerned consisted of defendant's failure to know and understand its dangerous products and to be able within reasonable delay to advise plaintiff of the precise nature and content thereof.
We believe the foregoing views neither disturb nor deviate from the rule obtaining in this state (to which this Court continues to adhere) to the effect a plaintiff may not recover for mental pain and anguish occasioned by injury to another. Excepted from said rule, however, are those instances wherein a plaintiff suing for mental pain and anguish occasioned by physical injury *159 to another does so on the basis of a breach of a primary legal duty and obligation owed by the defendant directly to the plaintiff seeking such damages.
The exceptions of res judicata filed on behalf of defendants are clearly without merit considering the causes of action of plaintiffs in the instant case are found to be entirely separate and distinct from the previously adjudicated claim of plaintiffs' minor son. Moreover, the parties are not the same for present plaintiffs' causes of action were never tried in the court below considering their suits were dismissed by the trial court upon defendants' exceptions of no right and no cause of action.
It is well settled in the jurisprudence of this state that for an exception of res judicata to lie the cause of action must be the same and the previous action relied upon must be between the same parties. LSA-C.C. Art. 2286; Bullis v. Town of Jackson, 203 La. 289, 14 So.2d 1; Lloveras v. Reichert, 197 La. 49, 200 So. 817; Durmeyer v. Streiffer, 215 La. 585, 41 So. 2d 226; Hart v. Hardgrave, La.App., 103 So.2d 910; Buhler v. Villec, La.App., 117 So.2d 286.
Defendants' pleas in bar of judicial estoppel predicated on the ruling in Williams v. Marionneaux, 240 La. 713, 124 So. 2d 919, holding that a plea in bar of judicial estoppel (rather than one of res judicata) is procedurally proper in an instance wherein a cause of action asserted by plaintiff is alleged to have abated by virtue of previous litigation with the primary obligor has no application in the case at bar for the reason that the liability of defendants herein, if any, is not secondary or derivative but primary and for the further reason that the parties plaintiff in the suit of the minor and the present action are not the same.
Accordingly, it is ordered, adjudged and decreed that the pleas of res adjudicata and pleas in bar of judicial estoppel filed herein on behalf of defendants, St. Paul Mercury Insurance Co. and Leo Burks d/b/a Southern Terminix Co., be and the same are hereby overruled and the judgment of the trial court sustaining said defendants' exceptions of no right and no cause of action and dismissing plaintiffs' suits annulled, rescinded, reversed and set aside and these causes remanded to the court below for further proceedings not inconsistent with the views herein expressed.
Reversed and remanded.