REDMANN, Judge.
Plaintiff appeals from the dismissal of his suit individually and on behalf of his minor daughter for damages resulting from the striking of the daughter by an automobile owned and operated by one defendant and insured by the second. The trial court concluded, without giving any findings of fact, that the sole cause of the accident was the negligence of plaintiff’s daughter.
The accident giving rise to this lawsuit occurred near Lynn’s Trailer Park on St. Bernard Highway, a two-lane paved thoroughfare. The accident occurred about 5 :30 p.m., after darkness had set in. The defendant was traveling outbound from New Orleans and plaintiff’s daughter was crossing the highway from defendant’s left to his right.
Plaintiff’s daughter, Lydie Ann Brous-sard, was twelve years old on the date of the accident. She testified that she and a companion were in the process of returning from a store, on the opposite side of the highway, to Lynn Trailer Park, located to defendant’s right. The child looked and saw automobile lights approaching on the highway but thought that they were sufficiently distant to permit her crossing. She successfully crossed, stopped on the gravel shoulder, and turned to look for her companion. At this point, she was hit by defendant’s car and remembers nothing further until awakening in the hospital.
The defendant driver testified that, as he was proceeding outbound at about 30 mph with his highway lights on, he saw a young girl run across the highway about 40 to 60 *717 feet in front of his vehicle. He applied his brakes, slowing to 20-25 mph, then eased off the brakes. He then saw another young girl already on the highway. The girl stopped momentarily at the middle of the highway, and defendant thought that she would remain there. As he continued closer, however, she darted into the path of his vehicle, and he again applied his brakes and swerved to the left to avoid hitting her. Despite his evasive maneuver the right front of the car struck the girl, throwing her into a roadside ditch. Defendant stopped his car a few yards past the point of impact, its front end angled toward the ditch on the right side of the road as a result of his having turned back to the right.
The only disinterested eye-witness to testify was Mr. Rivers Gaspard, driver of a vehicle following defendant’s at the time of the accident. He was traveling at about 30 mph and attempted to pass defendant’s car. As he pulled into the passing lane, however, his headlights revealed two young girls walking along the highway some 60 or 70 feet ahead. Gaspard was carrying a sheet of plywood atop his car and, thinking it might strike the children, pulled back into the outbound lane behind defendant. Almost immediately thereafter, the defendant braked his car and swerved, finally ending up with his car facing off the right side of the road toward the ditch. While Gaspard indicated defendant had swerved to the right, he could not say whether defendant had first swerved to the left. Gaspard swung his vehicle to the left around defendant’s car, and observed a young girl standing in the middle of the roadway on the left side of defendant’s car, apparently unharmed. Gaspard pulled off the highway, stopped his car, and walked back toward defendant’s car. He then saw the girl who had been standing in the middle of the road run to the roadside ditch.
We believe the preponderance of the testimony establishes that the defendant apparently swerved to avoid hitting the second girl, but in doing so hit Lydie Brous-sard, who had already safely crossed and was on the shoulder of the highway. The Broussard girl testified that she was standing on the gravel shoulder when hit. The testimony of Mr. Gaspard, the only disinterested eye-witness, seems to corroborate Lydie’s testimony, since Gaspard related seeing the second girl standing in the middle of the highway after defendant had braked his car and swerved. Also, after the impact Lydie Broussard was thrown from the point of impact into the roadside ditch, on a line more perpendicular than parallel to the highway. The defendant testifed that he hit the second girl with the right front of his vehicle as he swerved left when the girl was at about the middle of his lane. We think it unlikely that, under such circumstances, the girl would have been thrown on a nearly perpendicular line towards the roadside ditch. It is more probable that the defendant swerved to the right to avoid the girl in the middle of the highway and struck Lydie Brous-sard while she was standing on the gravel shoulder.
Defendant attempts to discredit this version of the accident by pointing out that the Broussard girl testified that she turned to look for her companion after reaching the shoulder, which would expose her left side to the defendant’s vehicle, yet her right hip was contused. The girl’s testimony appears to us to have been merely that she was turning, not that she had completed the turn, although on cross examination she agreed that turning around would place her left side towards defendant. And while there was damage on her right side, there was damage to the central front portion of her pelvis. We do not consider the child’s testimony about turning, considered with the injuries suffered, renders improbable her version of the accident.
Under the circumstances, we conclude that the defendant failed to exercise the high degree of care imposed on motorists in the presence of children. See Woods v. Cappo, 232 So.2d 578, 581 (La. *718 App. 1st. Cir. 1970), and cases cited therein. Once defendant, in an area he testified he knew there generally were many children, saw the first girl cross the highway a short distance in front of his vehicle, he should have exercised extreme care. He saw or should have seen the second girl at the same time, as Gaspard had seen them. His failure to exercise the care due then was aggravated by his assumption, according to his testimony, that the second girl he saw standing in the middle of the highway would remain there. That twofold negligence by defendant caused his subsequent swerving to avoid her, and thus caused the injuries suffered by Lydie Broussard. We hold defendants liable.
Lydie’s principal injuries included:
(1) Multiple linear fractures, with mild to moderate displacement, of the lower anterior pelvis (pubis and ischeum), which immobilized her for two weeks. She could sit during the third week and began walking after the fourth week. She walked with a noticeable limp for “quite a while”, but with no noticeable limp by the time of trial. The pelvic fractures suggest the possibility only of a strictured birth canal and the future possibility of difficulty in or prevention of normal childbirth.
(2) A suggested parietal skull fracture, not confirmed by the X-rays. (Lydie had earlier in life had a skull fracture.)
(3) Aspiration pneumonitis from nosebleed into the trachea, treated with oxygen and antibiotics, and clearing without incident.
(4) Rupture of right kidney, requiring ultimately surgical removal of the kidney, with resultant scar.
(5) Strabismus or cross-eye of both eyes, due to paralysis of a cranial nerve, thought to be caused by the suspected skull fracture. The resultant diplopia or double vision required first the use of an eye patch and ultimately successful surgery on one eye.
(6)Many minor injuries, including a mild cervical strain, edema of the gluteus, hemorrhagic edema, multiple bruises and superficial lacerations, nosebleed (which with her other injuries required a blood transfusion), headaches, etc.
Also attributable to the accident was the requirement, due to her injuries, that necessary dental work unconnected with the accident be done in the hospital rather than in the dentist’s office. We include the hospital and medical (not the dentist’s) bills as an item of damage caused by the accident.
Lydie’s recovery from her many serious injuries seems to have progressed relatively rapidly, although she was still under treatment by opthalmologist, urologist and general practitioner at time of trial, about a year after the accident.
Lydie had to spend most of that year out of her school classes, but managed to pass the school year although she is having difficulty keeping up with her work.
We have reviewed several prior cases for quantum, including LeBlanc v. Southern Farm Bureau Cas. Ins. Co., 157 So.2d 329 (La.App.1963); Brooks v. Kirkpatrick, 175 So.2d 342 (La.App.1965); Michel v. Guillot, 186 So.2d 889 (La.App.1966), writ refused 249 La. 709, 190 So.2d 231; Sherwood v. Ticheli, 10 La.App. 280, 120 So. 107 (1929); Wise v. Prescott, 142 So.2d 613 (La.App.1962) (reviewed on other grounds 244 La. 157, 151 So.2d 356 (1963) ).
We think that an award of $40,000 in general damages is appropriate for Ly-die’s pain and suffering, physical and mental, due to her injuries, and for her loss of a kidney and possible future difficulties, in view of her fortunately rapid recovery.
Special damages for medical expenses amount to $5,367.96.
The insurer’s policy limit is $10,000.00.
Accordingly the judgment appealed from is reversed, and judgment is rendered in *719 favor of Gabriel Broussard individually in the amount of $5,367.96 and as father of and for his minor daughter Lydie Ann Broussard in the amount of $40,000, against Carroll A. Melerine, and, to the extent of its policy limits of $10,000, against Allstate Insurance Company, in so-lido ; and for all costs.
Reversed and rendered.